Elam *v*. The State, *ex rel*. Taylor.

No. 9737.

ELAM *v*. THE STATE, EX REL. TAYLOR.

CRIMINAL COURTS.—*Marion Criminal Circuit Court.*—*Prosecuting Attorney.*—*Statute Construed.*—*Constitutional Law.*—Under sections 7 and 8 of "An Act concerning Criminal Courts," Acts 1881, p. 111. the Marion Criminal Circuit Court became the Criminal Court of Marion county, organized under section 1,and its prosecuting attorney, on September 19th, 1881, continued in office, and will continue to be the prosecuting attorney thereof, under section 3, article 15, of the constitution, until his successor shall have been elected and qualified.

SAME.—*Successor's Election.*—*Nineteenth Judicial Circuit.*—In such court the successor will be the prosecuting attorney of the Nineteenth Judicial Circuit, elected and qualified after the act took effect.

SAME.—*Prosecuting Attorney Elected Before April 12th, 1881.*—T., who was elected and qualified as such prosecuting attorney before the enactment of the act approved April 12th, 1881, did not become the successor of E., who had been elected in 1878, and was holding September 19th, 1881, beyond his term of two years, because of the failure of the electors of Marion county to elect, or vote for, his successor in October, 1880.

QUO WARRANTO.—*Pleading.*—*Information.*—*Answer.*—*Demurrer to Carried Back.*—Where an information shows that the relator has no interest in the office in controversy, or its salary, fees and emoluments, and that the incumbent is lawfully in possession, his demurrer to the answer, reciting the same facts in substance, should not only be overruled, but, as it searches the record, should be carried back and sustained to the information.

From the Marion Circuit Court.

*T. A. Hendricks, C. Baker, O. B. Hord* and *A. W. Hendricks*, for appellant.

*E. F. Ritter, L. Ritter* and *A. F. Denny*, for appellee.

HOWK, C. J.—This was an information, in the nature of a *quo warranto*, filed by the appellee's relator, Newton M. Taylor, Esq., against the appellant, John B. Elam, Esq., to determine their respective titles to the office of prosecuting attorney of the Marion Criminal Court. To the relator's information the appellant answered in two paragraphs, to each of which paragraphs the relator's demurrer, for the alleged insufficiency of the facts therein to constitute a defence to the information, was sustained by the court, and to

Elam *v.* The State, *ex rel.* Taylor.

each of these rulings the appellant excepted. Declining to amend or plead further, judgment was rendered against the appellant, and in favor of the appellee's relator, in accordance with the prayer of his information ; and from this judgment this appeal is now here prosecuted.

Errors have been assigned by the appellant, in this court, which call in question the correctness of the decisions of the circuit court in sustaining the relator's demurrers to each of the paragraphs of answer. Before considering any of the questions presented for our decision by either of these errors, we deem it necessary to a proper understanding of the case that we should briefly state "the facts which constitute the grounds of the proceeding" of the appellee's relator, as the same are set forth in his information. At the October election, in 1878, the appellant was duly elected to the office of prosecuting attorney of the "Marion Criminal Circuit Court," for the term of two years from and after the 22d day of October, 1878, on which day he qualified and entered upon the discharge of the duties of his office, and from and after said last named day, the appellant continued in the possession of said office, and in the discharge of its duties, although he had never been re-elected or appointed thereto, until the 19th day of September, 1881. The relator further said that, by the provisions of an act of the General Assembly of this State, entitled "An Act concerning Criminal Courts," approved April 12th, 1881, which act took effect on the 20th day of September, 1881, the said office was abolished, as was also the said Marion Criminal Circuit Court, and a new court was created, to wit, the Marion Criminal Court; that, by said act, all the business and jurisdiction of said criminal circuit court were transferred to said criminal court; that, by the provisions of said act, the said criminal court became one of the courts within and belonging to the Nineteenth Judicial Circuit, in this State, and the duties, privileges and emoluments of prosecuting the pleas of the State, in the said

criminal court, devolved upon the prosecuting attorney of the Nineteenth Judicial Circuit. The relator further said that, on the 12th day of October, 1880, he was eligible and was duly elected to the office of prosecuting attorney of said Nineteenth Judicial Circuit, then and since composed of the counties of Marion and Hendricks; that he was duly commissioned, and had lawfully qualified, as such prosecuting attorney, and afterward, on the 27th day of October, 1880, had entered upon, and had since continued in, the discharge of the duties of said office; and that, as such officer, it was his duty and privilege to prosecute the pleas of the State in said criminal court.

The relator further said that, on the 20th day of September, 1881, the appellant wrongfully and unlawfully took possession of the office of prosecuting attorney of said criminal court, and assumed the duties and privileges of said office, and still continued so to do; and that, on said last named day, the relator demanded of the appellant that he should desist from all claim to said office, and cease to perform its duties, which he refused to do, and asserted his lawful right to hold possession of said office, and to discharge the duties and receive the proceeds thereof, to the great damage and injury of the relator. Wherefore, etc.

In the first paragraph of his answer the appellant admitted that, on the 8th day of October, 1878, he was duly elected prosecuting attorney of the Marion Criminal Circuit Court, and afterward qualified as such prosecuting attorney, and entered upon the discharge of the duties of said office; that he had ever since continued in the possession of said office and in the discharge of its duties; that the relator was duly elected and qualified as prosecuting attorney of said Nineteenth Judicial Circuit, and had ever since been in the possession of said office and in the discharge of its duties; and that, on the 20th day of September, 1881, the relator demanded of him, the appellant, that he should surrender the posses-

sion, duties and emoluments of his said office of prosecuting attorney of said criminal circuit court to the relator, which he, the appellant, refused to do, and all as alleged in the relator's information.

But the appellant alleged that, at and before the time of holding the regular October election, in 1880, in said Marion county, it was generally believed by the people and the county officials, that the term of appellant's office, to which he had been elected in October, 1878, was for four years instead of for two years, and that there would be no election for a successor to him in said office until the general election in 1882, and that, therefore, no notice was given of such an election, and no election was held, and no votes were cast, for his said office of prosecuting attorney of said criminal circuit court, and that no successor to the appellant, in said office, had ever been at any time elected or qualified. Wherefore the appellant said that, by virtue of the constitution of this State, in such case made and provided, he had continued, and did still continue, rightfully, in the possession of said office, in the discharge of its duties, and in the enjoyment of its emoluments.

From the foregoing summary of the relator's information, and of the first paragraph of the appellant's answer thereto, it will be readily seen, we think, that there is no substantial difference between the parties in regard to any of the material facts of this case; but that they differ *toto cœlo* in their respective views of the law which must govern and control the decision of the court upon those facts. There can be no doubt, as it seems to us, that, under the facts of this cause alleged and admitted, and under the law of this State applicable thereto, the appellant was the prosecuting attorney, both *de facto* and *de jure*, of the Marion Criminal Circuit Court, from the time of his election and qualification as such officer, in October, 1878,

until the 19th day of September, 1881, when the act enti-
tled "An Act concerning Criminal Courts," approved April
12th, 1881, took effect and became a law in force. It is
true that the appellant's term of office, as such prosecuting
attorney, was a term for two years, under the statutes of
this State applicable to such office, and no longer. *Hench*
v. *The State, ex rel. O'Rourke,* 72 Ind. 297. It is also
true that if, at the general election in October, 1880, a suc-
cessor to the appellant, as such prosecuting attorney, had
been elected by the voters of Marion county, such successor
would have been lawfully entitled to the possession of said
office, with all its emoluments, at the expiration of the ap-
pellant's term of two years, to wit, on the 22d day of Oc-
tober, 1880.

But it is an admitted fact in this case, that no successor
to the appellant, as such prosecuting attorney, was ever
elected at the general election in October, 1880, or at any
other time. In such a case, the provisions of section 3 of
article 15 of the constitution of this State, are expressly
applicable. This section provides as follows: "Whenever
it is provided in this constitution, or in any law which may
be hereafter passed, that any officer, other than a member
of the General Assembly, shall hold his office for any given
term, the same shall be construed to mean, that such officer
shall hold his office for such term, and until his successor
shall have been elected and qualified." This provision of
the fundamental law extended the legal term of the appel-
lant, as such prosecuting attorney, and continued him in the
possession of said office, both *de facto* and *de jure,* under
the admitted facts of this case, "until his successor shall
have been elected and qualified," or until the taking effect
of the above entitled act of April 12th, 1881, on the 19th
day of September, 1881. *Akers* v. *The State, ex rel.,* 8 Ind.
484; *Butler* v. *The State, ex rel.,* 20 Ind. 169; *Shannon* v.

*Baker*, 33 Ind. 390 ; *Baker* v. *Kirk*, 33 Ind. 517 ; *Steinback* v. *The State, ex rel.*, 38 Ind. 483 ; *The State, ex rel., v .Berg*, 50 Ind. 496.

The question arises, and this is the controlling question in this case, as the same is presented upon the information and the first paragraph of the answer thereto : Did the above entitled act of April 12th, 1881, when it took effect as aforesaid, on the 19th day of September, 1881, *eo instanti* abolish the said office of prosecuting attorney, and, also, the said Marion Criminal Circuit Court ? If this question must be answered in the affirmative, as the relator claims that it must be, then it is clear that, whatever may be his rights in the premises, the appellant's occupation, as such prosecuting attorney, is gone, and he, at least, has no farther claim to or interest in the emoluments of such office. It will be readily seen, however, that the proper answer to this question depends upon the construction which must be given to the provisions of the above entitled act. Doubtless, the General Assembly might have abolished both the criminal circuit court and the office of its prosecuting attorney ; for both the court and the office of its prosecutor were the creatures of legislative enactment, and the power which creates certainly can destroy. But the question for our determination is not in regard to what the General Assembly might have done, but in regard to what the law-making power did, and intended to do, in and by the act under consideration.

The act is vague and uncertain in its provisions, but it is clear, we think, that, in its enactment, the Legislature intended to provide, *first*, for the organization, in such counties as might thereafter be designated by law, of a court to be called the criminal court of ——— county (according to the name of the county), and, *secondly*, for the continuance of criminal courts in those counties in which criminal circuit courts were organized and existing at the time of the passage of the act, but under the name of criminal courts.

instead of the name of criminal circuit courts. These were the only purposes of the act in question, as it seems to us. The first five sections of the act were devoted, in the main, to the *first* of these purposes. The sixth section merely provided that a judge of a criminal court should be competent to act as judge of a circuit or superior court in certain cases, while the remaining sections of the act were exclusively devoted to the *second* of the above named purposes. These latter sections read as follows :

"Sec. 7. Criminal courts are hereby established in each of the counties of Marion, Allen and Vigo ; said court in the county of Marion, shall commence its terms on the first Mondays of January and July of each year, and in the counties of Allen and Vigo, on the first Mondays of April and October. In the said counties of Marion, Allen and Vigo, respectively, the terms of said court shall continue six months, if the business shall require it, and during such times such courts, respectively, shall, at all times, be open for criminal trials and proceedings.

"Sec. 8. The criminal circuit courts of the several counties named in the last preceding section shall become criminal courts under this act, and the judges and prosecuting attorneys thereof, respectively, shall be the judges and prosecuting attorneys of the courts hereby created in said counties respectively, until the expiration of their respective terms of office, and the criminal courts hereby created shall proceed with the business of the said criminal circuit courts of said counties respectively, in the same manner as if no change had been made : *Provided, however,* That the said criminal court in Vigo county, shall cease to exist after the third Monday in November, 1882." Acts 1881, p. 112.

The two sections, just quoted, are the only sections of the act under consideration, in which any direct reference is made to the criminal circuit courts, previously organized and existing at the time of the act, in the counties of Marion,

Allen and Vigo, respectively. We are clearly of the opinion, that there is no provision, either in the sections quoted or in any other section of the act, from which it can be fairly inferred even, that the General Assembly intended to abolish the existing criminal courts in either of the above named counties, except in the county of Vigo, in which county the act expressly provided, that the court should cease to exist after the third Monday in November, 1882. On the contrary, it seems to us that, upon a reasonable construction of the provisions of the act, it was manifestly the legislative intent, that the existing criminal circuit courts in the counties mentioned, after the elimination of the inapt word "circuit," from their respective names, should become, be and continue the criminal courts of the respective counties, under the said act.

In regard to the office of prosecuting attorney of the criminal courts, the only reference thereto in the above entitled act, except in the sections hereinbefore quoted, is found in the following sentence in section 2 thereof, namely: "The clerk of the circuit court and the sheriff of the county shall be clerk and sheriff of such criminal court, and the prosecuting attorney of the circuit shall, by himself or his deputy, prosecute the pleas of the State in said court." It is evident, we think, that the language just quoted does not in terms abolish the office of prosecuting attorney of the criminal circuit court, as such office might exist at the taking effect of the act; and the intention of the Legislature, in the enactment of the provision last quoted in regard to such office, can only be arrived at by construing this provision in connection with the provisions of section 8, above quoted, on the same subject. Thus construed, we have no difficulty in reaching the conclusion, that the intention of the General Assembly, in the enactment of the act under consideration, in so far as it related to or affected the criminal courts then existing in the above named counties, clearly was, that the

status of those courts, and each of them, with the bare exception of the change of their respective names and the incidental change of the seals thereof, should be and remain as it was at the time of the taking effect of said act, and especially so as to the judges and prosecuting attorneys of such courts, then lawfully in the possession of their respective offices, who were to remain in such possession "until the expiration of their respective terms of office."

The appellant, as we have seen was the prosecuting attorney, both *de facto* and *de jure*, of the Marion Criminal Court, when the above entitled act took effect, holding such office for a term which would not expire until his successor therein was thereafter elected and qualified. Under the constitution, which alone governed and controlled the duration of the appellant's term of office, at the time of the taking effect of said act, he was then holding, and had the right to continue to hold, the said office, "until his successor shall have been elected and qualified." We need not argue, we think, for the purpose of showing that this constitutional provision made the expiration of the appellant's term of office to depend entirely upon the future election and qualification of his future successor in said office. Nor does it follow, from what we decide, that the appellant will never have a legal successor, and that, therefore, his term of office will be without limit. On the contrary, we expressly decide that his term of office will expire, whenever, after the taking effect of the act under consideration, his successor shall be elected and qualified. Under the act, as we construe it, his successor in office will be the prosecuting attorney of the Nineteenth Judicial Circuit, who may be elected and qualified as such after the act took effect, but not the appellee's relator who, by his own showing, was elected and qualified as such prosecuting attorney, not only before the taking effect, but before the passage even, of the act in question. Surely it can not be said, with any degree of legal accuracy, that the appel-

lee's relator became or was the appellant's successor in office.

We are of the opinion, therefore, upon the case made by the information and the first paragraph of the answer thereto, that the relator's demurrer to said paragraph of answer ought not only to have been overruled as to said paragraph, but, as it searched the record, to have been carried back and sustained by the court to the relator's information. It seems to us, that the information was hopelessly bad, for two good and sufficient reasons : 1. Because it showed, that the appellant was the prosecuting attorney, both *de facto* and *de jure*, of the said criminal court, and lawfully in the possesion of such office, at the time the above entitled act took effect, and that his term of office, then existing, had not since expired ; and, 2. Because it showed, that the appellee's relator had not, either at the time of the taking effect of said act or at any time since, any title whatever to, or any right to the possession of, or any interest in, the office in controversy, or its salary, fees or emoluments.

Our conclusion, in regard to the insufficiency of the relator's information, renders it wholly unnecessary for us to extend this opinion, in the examination and decision of any other question presented by the record of this cause.

The judgment is reversed, at the costs of the appellee's relator, and the cause is remanded, with instructions to overrule the demurrer to the first paragraph of answer, and to carry it back and sustain it to the information, and for further proceedings not inconsistent with this opinion.