The State, *ex rel.* Carson, *v.* Harrison.

## No. 14,005.

## The State, ex rel. Carson, v. Harrison.

Office and Officer.— *Vacancy.*—*Appointment by Governor.*—While it is the right of the Governor to determine for his own guidance in each particular case whether a vacancy exists in an office, yet he can not make a valid appointment unless there is a vacancy in fact.

Same.—*Power to Determine Whether Vacancy Exists.*—The authority to fill vacancies confers upon the Governor no judicial power, and the title of an incumbent can not be affected by the *ex parte* judgment of the executive that the office is vacant.

Same.—*Right to Judicial Hearing.*—The final adjudication of such a right is, unless otherwise specially provided by competent authority, a matter of judicial concern, and the prior claimant is entitled to be heard in court.

Same.— *When Office is Vacant.*—The word "vacancy," as applied to an office, has no technical meaning, but an office is vacant or not according to whether it is occupied by one who has a legal right to hold it and to exercise the powers and perform the duties pertaining thereto.

Same.—*Holding Over.*—Where, by the Constitution or laws, officers are elected for a term and until their successors are elected and qualified, they are thereby authorized to continue to hold until superseded by the election of other persons in their places.

The State, *ex rel.* Carson, *v.* Harrison.

SAME.— *What Officers Entitled to Hold Over.—Election by Legislature.— Constitutional Law.*—Section 3 of article 15 of the State Constitution, under which officers chosen for a given term are entitled to hold over until their successors are *elected and qualified,* applies as well to officers elected by the Legislature or other organized body as to those elected by the people at large, and the right to hold over continues until a qualified successor has been elected by the electoral body to which the incumbent owes his election or which by law is entitled to elect a successor.

SAME.—*Benevolent Institutions.—President Board of Trustees.—Failure of Legislature to Elect.—Appointment by Governor.*—The act of February 21st, 1883, relating to the management of the benevolent institutions of the State, provided for the election by the Legislature of a president of the several boards of trustees, whose term of office should be four years. The act further provided that if a vacancy should occur in such office when the Legislature was not in session, the Governor should appoint, the appointment to hold good until the next session. The term of the officer elected in 1883 expired during the session of the Legislature of 1887, but that body adjourned without electing a successor.

*Held,* that, under the Constitution, the incumbent is entitled to hold over, and, there being no vacancy, an appointment by the Governor is without effect.

SAME.—*Constitutional Limitation of Tenure.—Right to Hold Over not Defeated by.*—The provision of section 2 of article 15 of the Constitution, that "the General Assembly shall not create any office the tenure of which shall be longer than four years," does not affect the right of an officer elected by the General Assembly for a term of four years to an office of legislative creation to hold over as provided in section 3 of the same article.

From the Boone Circuit Court.

*L. T. Michener,* Attorney General, *E. K. Adams, L. J. Hackney, J. S. Duncan, C. W. Smith* and *J. R. Wilson,* for appellant.

*F. Winter, A. Baker, E. Daniels, T. L. Sullivan, A. Q. Jones, C. S. Wesner, O. D. Wesner, R. W. Harrison* and *B. S. Higgins,* for appellee.

MITCHELL, C. J.—The present case involves a controversy between the relator, Joseph L. Carson, and the respondent, Thomas H. Harrison, concerning the right to exercise the office of president of the several boards of trustees of the

benevolent institutions of the State. The decision of the case depends upon the following facts:

On the 21st day of February, 1883, the General Assembly, by an act duly passed, vested the management of the benevolent institutions in three several boards of trustees, and provided for the election of one president for the three boards. The act provided that, upon the taking effect thereof, the General Assembly should elect a president of the several boards, and that if a vacancy occurred when the Legislature was not in session, such vacancy should be filled by appointment by the Governor, the appointment to hold good only until the session of the following General Assembly. The act provided further, that the term of office of the president of the boards should be four years, dating from the date of his election, and it made it the duty of the General Assembly to elect a president of the boards every four years. Pursuant to the provisions of the act, the respondent was elected president of the boards on the 27th day of February, 1883. The Legislature failed to elect a successor in February, 1887, as the law required, and the respondent continued, and still continues, in the office, asserting the right to hold over until a successor shall have been duly elected by a succeeding Legislature. Being of opinion that the failure of the General Assembly to elect a successor produced a vacancy in the office, the Governor appointed and commissioned the relator as president of the several boards, on the 27th day of May, 1887. The relator having duly qualified, and made demand, and being refused admittance into the office by the respondent, he prosecutes this suit in the name of the State, on his own relation, for the purpose of establishing his claim to the office. On his behalf, it is argued that the office became vacant on the 27th day of February, 1887, and that, in consequence of the failure of the General Assembly to appoint a successor to the respondent before the adjournment of its session in 1887, it became the duty of the Governor to supply the vacancy by

appointment, under section 18, article 5 (section 144, R. S. 1881), of the Constitution of the State.

So much of the above mentioned section as applies to the office in dispute reads as follows: "When, during a recess of the General Assembly, a vacancy shall happen in any office, the appointment to which is vested in the General Assembly, * * * the Governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected and qualified."

On the other hand, it is contended that, notwithstanding the failure of the General Assembly to elect, the office did not become vacant, because, it is said, the respondent was, and continues, entitled to hold over until a duly qualified successor shall appear, who shall have been duly elected by the General Assembly in the manner provided by the act of February 21st, 1883. Moreover, it is insisted, conceding the office to have become vacant, that the power of the Governor to supply vacancies, such as that under consideration, is confined to such as happen during the recess of the General Assembly. Hence, the argument proceeds, if the office in question became vacant at all, the vacancy happened while the General Assembly was in session, and, therefore, within the terms of the section relied on, the Governor had no power to appoint.

Avoiding, for the present, so much of the controversy as relates to the power of the Governor to supply a vacancy in an office, the appointment to which is vested in the General Assembly, when such vacancy happens at a time when the body in whom the primary power of filling the office resides is in session, we come at once to the controlling question, and inquire whether or not the office became vacant at the expiration of four years from the date of the respondent's election, four years, as we have seen, being the term prescribed by the act under which the office was created.

Whatever question there may be as to the particular time when the vacancy must have happened so as to have author-

ized an appointment by the Governor, it is beyond dispute that the office must have become legally vacant at some time before the executive function could have been called into exercise so as to make an appointment.

Although it has often been held that, where it appears *prima facie* that acts have been done, or that events have occurred, which subject an office to a judicial declaration of vacancy, the appointing power is authorized to proceed and appoint without procuring the office to be judicially declared vacant, it is nevertheless a condition precedent to the power to appoint that an actual vacancy shall have occurred. *State, ex rel.*, v. *Jones*, 19 Ind. 356 (81 Am. Dec. 403); *Mowbray* v. *State, ex rel.*, 88 Ind. 324; *Baker* v. *Wambaugh*, 99 Ind. 312; *Gosman* v. *State, ex rel.*, 106 Ind. 203.

While it is the right of the executive department to determine for its own guidance whether or not a vacancy exists in each particular case, and while every intendment is to be indulged in favor of the action of the executive, it must nevertheless be borne in mind that the power of the Governor to make a valid appointment does not arise until there is a vacancy in fact. The existing title of an incumbent can not be extinguished or affected by the *ex parte* judgment of the executive that the office is vacant. The authority to fill vacancies confers upon the Governor no judicial power. *State* v. *Seay*, 64 Mo. 89.

The final adjudication of such a right is, unless otherwise specially provided by competent authority, a matter of judicial concern, in respect to which the prior claimant is entitled to be heard in a forum whose proceedings are distinguished by the cautionary methods appropriate to the ascertainment and protection of personal and property rights. *Page* v. *Hardin*, 8 B. Mon. 648; *Commonwealth* v. *Meeser*, 44 Pa. St. 341; *Dullam* v. *Willson*, 53 Mich. 392.

The effect of an executive appointment, and the rights acquired by the appointee, are, therefore, dependent upon whether or not the office was without an incumbent, lawfully

entitled to continue therein, at the time the appointment was made. *State* v. *McNeely*, 24 La. Ann. 19.

The word " vacancy," as applied to an office, has no technical meaning. An office is not vacant so long as it is supplied in the manner provided by the Constitution or law with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it; and, conversely, it is vacant in the eye of the law whenever it is unoccupied by a legally qualified incumbent, who has a lawful right to continue therein until the happening of some future event. *Stocking* v. *State*, 7 Ind. 326 ; *Collins* v. *State, ex rel.*, 8 Ind. 344; *Akers* v. *State, ex rel.*, 8 Ind. 484; *State, ex rel.*, v. *Bemenderfer*, 96 Ind. 374; *Gosman* v. *State, ex rel., supra;* *Butler* v. *State, ex rel.*, 20 Ind. 169 ; *People* v. *Tilton*, 37 Cal. 614; *State* v. *Lusk*, 18 Mo. 333; *Commonwealth* v. *Hanley*, 9 Pa. St. 513.

When an office has been conferred upon one legally eligible, and has been accepted, no vacancy can be said to exist therein until the term of service and right to hold as fixed by the law expires, or until the death, resignation or removal of the person elected or appointed. *Johnston* v. *Wilson*, 2 N. H. 202 (9 Am. Dec. 50).

Of course, it is not to be understood that an office can not become vacant, as respects the appointing power, so long as it remains in the actual physical occupancy of some one who asserts a claim thereto. An office is legally vacant unless the occupant has an unexpired right or title, founded in the Constitution or law, precisely as a house is vacant of a lawful tenant in case the lessee, without any provision authorizing him to hold over, refuses to surrender at the expiration of his term.

The inquiry then comes to this complexion : Had the respondent's lawful right to continue in the office of president of the several boards having the management of the State's benevolent institutions expired prior to or at the time of the relator's appointment? If it had, the office was vacant in

law, and the respondent's continuance therein in defiance of the executive appointment is in the nature of usurpation. If it had not, the power of executive appointment had not arisen, and the designation of the relator by the Governor was futile and ineffectual.

That the fixed term of four years for which the respondent had been elected had expired prior to the relator's appointment, is beyond dispute, and it is, therefore, quite certain that the decision of the question must depend upon whether or not the respondent had the right to hold over until his successor was elected, and qualified, by the body authorized to make the original selection, or whether a vacancy occurred at the expiration of four years.

Whether or not, as a general principle of the common law, officers are entitled to hold over beyond their prescribed terms without some express provision, is not settled upon authority, although the view adopted by the American courts seems to be that, in the absence of any restrictive provision, the officer is entitled to hold until he is superseded by the election of another person in his place. *Tuley* v. *State, ex rel.*, 1 Ind. 500; *People* v. *Runkle*, 9 Johns. 147; *Trustees* v. *Hills*, 6 Cow. 23 (16 Am. Dec. 429); *McCall* v. *Byram Man'f'g Co.*, 6 Conn. 428; *State* v. *Fagan*, 42 Conn. 32; *Sparks* v. *Farmers' Bank*, 3 Del. Ch. 274 (9 Am. L. Reg. 365); *Stratton* v. *Oulton*, 28 Cal. 44; *People* v. *Bull*, 46 N. Y. 57; 1 Dill. Munic. Corp., section 219.

Whatever the rule of the common law may have been, it is quite certain that where, by the Constitution or law, officers are elected for a term, and until their successors are elected and qualified, they are thereby authorized to continue to hold and exercise their offices until they are superseded by the election of other persons in their places. *Tuley* v. *State, ex rel., supra; Miller* v. *Burger*, 2 Ind. 337; *Baker* v. *Kirk*, 33 Ind. 517; *State, ex rel.,* v. *Berg*, 50 Ind. 496; *Gosman* v. *State, ex rel., supra; Elam* v. *State, ex rel.*, 75 Ind. 518.

The policy of provisions of that nature is to prevent the

happening of vacancies in office, except by death, resignation, removal and the like.   They rest upon the assumption that the wiser and more prudent course is, in case the electoral body fails to discharge its functions, to authorize the incumbent to hold over until the succeeding election, rather than that a vacancy should occur to be filled by the appointing power.

In recognition of the wisdom of this policy, the organic law of the State—section 3, article 15 (section 225, R. S. 1881)—declares as follows: " Whenever it is provided in this Constitution, or in any law which may be hereafter passed, that any officer, other than a member of the General Assembly, shall hold his office for any given term, the same shall be construed to mean that such officer shall hold his office for such term and until his successor shall have been elected and qualified."

The effect of the foregoing provision is more than to supply the office until an executive appointment can or shall be made with a person qualified to discharge its duties.   It adds an additional. contingent and defeasible term to the original fixed term, and excludes the possibility of a vacancy, and, consequently, the power of appointment, except in case of death, resignation, ineligibility or the like.   *Gosman* v. *State, ex rel., supra,* and cases cited.

Thus, in *People* v. *Whitman,* 10 Cal. 38, the court said of a similar provision: " The term of the office is fixed at two years, certain, with a contingent extension.   When this contingency happens, this extension is as much a part of the entire term as any portion of the two years.   The language of the Constitution is just as clear and express that the Governor shall hold his office until his successor is qualified, as it is that he shall hold it two years. * * * These two provisions are both contained in the same sentence, closely connected by the copulative conjunction ; and both relate to the term for which this officer shall hold his office." *Commonwealth* v. *Hanley, supra.*

The decisions of this court uniformly declare the law consistent with the principles above enunciated. *Gosman* v. *State, ex rel., supra,* and cases cited; *State* v. *Howe,* 25 Ohio St. 588; *Hubbard* v. *Crawford,* 19 Kans. 570.

It is certain, therefore, that all offices to which the above constitutional provision applies are held by the same title, or by as high and lawful tenure, after the prescribed term, until the title of a duly elected and qualified successor attaches, as before and during such term.

This right to hold over continues until a qualified successor has been elected by the same electoral body as that to which the incumbent owes his selection, or which by law is entitled to elect a successor. *Gosman* v. *State, ex rel., supra; State* v. *Lusk, supra; People* v. *Tilton, supra; Lawhorne, Ex Parte,* 18 Gratt. 85; *Johnson* v. *Mann,* 77 Va. 265; *State* v. *Jenkins,* 43 Mo. 261.

Tacitly conceding all that has thus far been said, it is contended on the relator's behalf that the constitutional provision under which officers are entitled to hold over until their successors are elected and qualified, has application solely to such officers as are elected by the electoral body at large, and that it does not embrace officers elected by the Legislature or any other organized body.

It is said that, according to the most approved definitions, the words "elect" and "appoint" are not legally synonymous.

As a general proposition, and for the purposes of this case, this may be conceded; but the question is not what is the best or primary definition of the terms "elect" and "appoint," or whether or not they are legally the equivalent of each other. It is rather to ascertain the sense in which the term "elected" was employed by the framers of the Constitution in the above section which authorizes officers to hold over until their successors shall have been elected and qualified. By attending to the provisions of the Constitution, it will be found that whenever the selection of an officer is re-

ferred to the people or to an organized body, as the Legislature, for example, it is called an election, or the term elect, or elected, is employed, and whenever such selection is referred to the Governor or other functionary it is called an appointment.

Thus, it is provided—section 13, article 2, which pertains to " suffrage and elections "—that "All *elections* by the people shall be by ballot; and all *elections* by the General Assembly, or by either branch thereof, shall be *viva voce.*"

Again, in section 30, article 4, it is provided that no Senator or Representative shall be eligible to any office the *election* of which is vested in the General Assembly.

Section 5, article 5, provides that in a certain contingency the General Assembly shall *elect* a Governor, or Lieutenant-Governor, as the case may be.

It is thus apparent that the power to choose officers by election, as that term was employed in the Constitution, is in some instances expressly, and in others by implication, conferred upon the General Assembly as well as upon the people at large.

Reference might be made to other sections of the Constitution in which selections to office by the people at large, or by the General Assembly, are designated by the terms " elect " or " elected."

In no case, save only in section 18 of article 5, to be noticed hereafter, is the selection to office, either by the electoral body at large or by the General Assembly, characterized in any other manner than as an election.  On the other hand, by the section last above referred to, the Governor is required to fill vacancies in office by *appointment*, and he is authorized by a subsequent provision to *appoint* the Adjutant, Quartermaster and Commissary Generals.

While, therefore, it is entirely accurate to say that an appointment is not the equivalent of an election in a constitutional sense, in determining the right of an incumbent to hold until his successor is elected, as in *Gosman* v. *State, ex rel., su-*

*pra*, or when passing upon the title of officers who were appointed, when the law required them to be elected, as in *Speed* v. *Crawford*, 3 Met. (Ky.) 207, it is, in our judgment, a fundamental error to assume that a selection to office by the General Assembly, when that body is expressly authorized to elect, is not an election in the constitutional sense.

As a matter of course, when an officer is entitled to hold over until his successor has been elected and qualified, or when the Constitution or law provides that an office shall be filled by election, either by the people or by a designated body, no latitude of construction can justify the reading of " elected " as a synonym of " appointed," so as to authorize the selection to be made in such cases by the appointing power. Moreover, when the Constitution or law provides that an office shall be filled by election, without expressly or by necessary implication defining the electoral body to whom the power of choosing is committed, the presumption is that the election is to be referred to the people of the civil or political division for which the officer is to be elected. *State* v. *Irwin*, 5 Nev. 111, 121 ; *Magruder* v. *Swann*, 25 Md. 173, 214.

In a constitutional sense, so far as respects the right of an officer to hold until his successor, or until a successor, shall have been elected or qualified, the term " elected " is to be understood as entitling the incumbent to hold until his successor shall have been selected or designated by the people, or by a duly organized body to whom the power of selection has been by law reserved, or upon whom it has been conferred, at the time, and substantially in the manner provided by the Constitution or law creating the office. It can have no application at all except to offices to which there is a fixed term annexed.

Thus to apply the term is not only etymologically correct, but it renders the several provisions of the Constitution consistent, symmetrical and easy of application, and effectuates the evident intention of its authors. Turning again to section 18 of article 5, it will be seen that it provides, in case a

vacancy happens in any office the appointment of which is vested in the General Assembly, that "the Governor shall fill such vacancy by appointment, which shall expire when a successor shall have been *elected* and qualified." As applied to an officer whose selection is vested in the General Assembly, it is apparent that the terms "appointment" and "elected" are used interchangeably in the above section. This follows necessarily for the reason that the person appointed by the Governor to fill the vacancy has a constitutional right to hold until a successor shall have been elected and qualified. If the construction should prevail that the word "elected" can only be referred to designations to office by the people at large, then there never could be a successor elected to an officer whose appointment is vested in the Legislature.

It will be seen that the section of the Constitution under which officers who hold for a given term are authorized to hold over until their successors shall have been elected and qualified, makes no reference to the method by which the officers so entitled were, or how their successors are to be, elected. It would seem, therefore, unless the term "elected," *ex vi termini*, and of necessity, imports an election by the people at large, to the exclusion of all other modes, that this provision must necessarily extend to all methods of selection to office which are recognized in the Constitution and laws as elections.

The Constitution, as we have seen, recognizes the right of the General Assembly to elect officers, and the act creating the office in dispute provides that upon the taking effect of the act the General Assembly shall "elect" a president of the boards, and that every four years thereafter a president shall be "elected." It is clear to our minds that such an election is within the constitutional provision authorizing an incumbent to hold over.

Our conclusion at this point is, that the relator's assumption that the provision of the Constitution respecting the right

of officers to hold over until their successors are elected and qualified does not apply to officers' elected by the General Assembly, is radically erroneous, and that it is an error which lies at the root of his case, and affords, substantially, the only plausible foundation upon which his contention rests.

Finally, it is contended on behalf of the relator, that the right to hold over does not exist in the present case, because the office in question is of legislative creation, and in support of this contention that part of section 2, article 15, of the Constitution, is appealed to, which declares that " the General Assembly shall not create any office the *tenure* of which shall be longer than four years."

It is said that a construction which extends the right to hold after the expiration of a four years term to an office of legislative creation, is a practical abrogation of that part of the Constitution above set out.     This contention rests upon a critical analysis of the word " tenure," which comes from the Latin *tenere*—to hold.     The argument assumes that the meaning to be attributed to the word " tenure," as used above, is substantially such as to render any person incapacitated or ineligible to hold an office of legislative creation for a longer period than four years by any method, in virtue of one selection or election; hence, it is said, since the Legislature can create no office which can be held for a longer period than four years, the respondent could not hold over, and the office in dispute necessarily became vacant, regardless of the constitutional provision under which officers are entitled to hold over in certain cases.     We are not impressed with the view thus urged.

While we concede that the constitutional inhibition imposes an absolute restraint against the creation of a term of office by the Legislature of longer duration than four years, and that it prohibits a legislative tenure, or right to hold by legislative authority, for a longer period than four years by virtue of one election or appointment, it by no means follows that the constitutional provision under which offices of leg-

islative creation may be held after the expiration of the term fixed, and until a successor is elected and qualified, is rendered inoperative. The right to hold over is derived from the same Constitution that imposes the limitation upon the General Assembly. The constitutional provision which adds to the fixed term a contingent right to hold over until a successor shall have been elected and qualified, applies in express terms to officers " provided in this Constitution or *in any law which may be hereafter passed.*"

To sustain the view contended for would require us, upon the mere construction or definition of a word—and a definition which in our view does not lead to the conclusion claimed—to entirely read out of, or materially modify, all that part of section 3, article 15, of the Constitution, which has reference to the holding over of officers who are incumbents in offices created by the General Assembly.

The obvious purpose of the framers of the Constitution was to inhibit the right of the General Assembly to create any office to which, by its authority, a tenure or right to hold for a longer period than four years might be fixed. But their purpose to prevent vacancies in office is equally apparent in respect to offices of legislative creation as in regard to those provided for in the Constitution. The result is, that the Constitution permits a legislative tenure for a fixed term not longer than four years, and if, at the end of that period, owing to the failure of the body charged with the duty of supplying the office by election, or for any other cause, no successor has been elected and qualified, the incumbent holds over by the paramount right of tenure which the Constitution supplies, until he is superseded by a duly qualified successor who shall have been elected in the manner provided by law. After the expiration of the term fixed by the General Assembly, the tenure or title of the officer is not under or by legislative approbation or authority, but by the continuing and superior authority and approbation of the Constitution. Thus, as we have seen, it becomes the duty of

the Legislature, under the act creating the office in dispute, to supply it by quadrennial elections for terms of four years each; but to prevent the possibility of a vacancy occurring, except by death, resignation or like casualty, the Constitution stands a continuous and perpetual source of supply, by the authority of which the incumbent holds over until the body authorized to elect furnishes a duly elected and qualified successor. The failure of that body to elect at the time when by law it should have made the election, can not create a vacancy in the office. The conclusion follows, that, under and by the very terms of the Constitution, the respondent was occupying the office as an officer *de facto* and *de jure* at the time the relator was appointed and commissioned, and because he was thus occupying, there was no vacancy, and hence no power in the executive to appoint.

Having reached the conclusion that there was no vacancy, it is manifestly not important that we should consider whether or not the Governor had power to appoint in case a vacancy had arisen during the session of the Legislature.

The judgment is affirmed, with costs.

Filed Feb. 28, 1888.