Argued 18 May; decided 14 September, 1898.

## STATE EX REL.° *v.* COMPSON.

[54 Pac. 349.]

CONSTRUCTION OF CONSTITUTION—APPOINTING POWER.—An act creating an office and providing that the incumbent thereof shall be elected by the legislature is not unconstitutional as an invasion of the Governor's prerogatives. The power to fill an office may be exercised by either the executive or the legislature, in the absence of a constitutional prohibition.

CONSTITUTIONAL CONSTRUCTION.—The Constitution of Oregon, so far as it relates to the legislature, is a limitation rather than a grant of power, and that body may exercise any of the powers of sovereignty not expressly withheld: *Biggs* v. *McBride*, 17 Or. 640, and *Eddy* v. *Kincaid*, 28 Or. 537, cited and applied.

TENURE OF PUBLIC OFFICE—VACANCY—CONSTITUTION.—In considering the tenure of public officials, the provisions of the Constitution of Oregon, Article XV, §§ 1 and 2, must be read together, and they mean that, while no office can be created with a tenure of over four years, yet the incumbent may hold longer than that by reason of a failure to provide his successor. No vacancy ensues by such failure.

CONSTITUTIONAL CONSTRUCTION—PUBLIC OFFICERS.—The meaning of the expression "All officers" used in the Constitution of Oregon, Article XV, § 1, is not limited to those officers named or provided for in that document, or to such as are chosen by popular election, nor is it limited at all except as to members of the legislature.

IDEM.—The word "elected" in the Constitution of Oregon, Article XV, § 1, providing that public officers shall remain in office until their successors are "elected and qualified" does not refer solely to a selection by the people, but includes a choice by the legislative assembly.

HOLDING OVER—VACANCY IN OFFICE.—Mere failure of the legislature for any length of time to appoint successors to officers who are to hold office until their successors are elected and qualified, does not create a vacancy which the Governor may fill by appointment.

VACANCY—FILING BOND.—Failure of officers holding over till their successors are elected and qualified to renew their bonds does not, in the absence of a provision requiring such renewal, make a vacancy to be filled by the Governor.

APPOINTMENT OF RAILROAD COMMISSIONER.—No vacancy which the Governor is authorized to fill exists in the office of railroad commissioner after the expiration of the time fixed by law for such commissioners to hold office. The incumbent simply remains in office until his successor is elected and qualified.

From Multnomah : E. D. SHATTUCK, Judge.

This is an action maintained in the name of the State, upon the relation of Albert I. Wagner, to oust H. B. Compson from a public office. It is alleged in the complaint that on February 17, 1893, the legislative assembly chose, for the term of two years, I. A. Macrum, J. B. Eddy, and H. B. Compson, as railroad commissioners, who duly qualified as such, and entered on the discharge of their duties ; that said assembly, at its biennial session of 1895, neglected to appoint any successors to said commissioners, who, claiming to hold over, continued to perform the duties of said office and to take the emoluments pertaining thereto ; that the legislative assembly, in 1897, again failed to choose any railroad commissioners, whereupon Macrum and Eddy, still claiming to hold over, took and subscribed the oath of office, and executed bonds for the faithful performance of their duties, but Compson neglected to retake the oath of office or to enter into another official undertaking ; that, during a recess of the legislature, a vacancy occurred in the board by reason of the expiration of Compson's term of office, whereupon the Governor, on August 20, 1897, appointed the relator, Albert I. Wagner, a railroad commissioner, who duly qualified as such, and at the time of his appointment possessed and now enjoys such qualifications as render him eligible to the office ; that prior to the commencement of

this action the relator demanded the possession of said office from defendant, who declined and still refuses to comply with such demand, but usurped the said office, which he unlawfully holds, to relator's damage, to the injury of the public, and contrary to the Constitution and laws of the State of Oregon. A demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, having been sustained, the relator declined to amend the pleading, whereupon the action was dismissed, and he appeals.

AFFIRMED.

For appellant there was a brief over the names of *Paxton, Beach & Simon,* and *Cicero M. Idleman,* with an oral argument by *Messrs. Ossian Franklin Paxton* and *Cicero Milton Idleman.*

For respondent there was a brief and an oral argument by *Mr. Julius C. Moreland.*

PER CURIAM. The contention in behalf of the relator is, first, that the act creating the Board of Railroad Commissioners (Hill's Ann. Laws, § 4002 *et seq.*) is unconstitutional, in so far as it attempts to vest in the legislative assembly the power of appointing the incumbents, and that the assumption of that authority by the lawmaking department trenches upon the prerogative of the Governor, upon whom the duty of filling vacancies in State offices devolves. But this identical question has twice been held adversely to relator's contention by this court, and can therefore no longer be regarded as an open one : *Biggs* v. *McBride,* 17 Or. 640 (21 Pac. 878, 5 L. R. A. 115); *Eddy* v. *Kincaid,* 28 Or. 537 (41 Pac. 156, 655). The effect of these decisions is that the fundamental law of the State, so far as it relates to the Legis-

lature, is a limitation and not a grant of power, and, this being so, the legislative assembly may exercise any of the powers of sovereignty not prohibited, and that the appointment of persons to office is within the domain of the law-making department (*People* v. *Hurlbut,* 24 Mich. 44, 9 Am. Rep. 103); or, as is said by Mr. Chief Justice MURRAY in *People* v. *Langdon,* 8 Cal. 1: "The power to fill an office is political, and this power is exercised in common by the legislatures, the governors, and other executive officers of every State in the Union, unless it has been expressly withdrawn by the organic law of the State." Mr. Justice LORD, in *State ex rel.* v. *George,* 22 Or. 142 (29 Am. St. Rep. 586, 29 Pac. 356), commenting upon the powers of the several departments of state, says: "While our constitution separates the powers of government into three distinct departments, and prohibits any of them from exercising any powers confided to the other, it does not undertake to declare what shall be considered legislative, executive, or judicial acts."

Notwithstanding some contrariety of judicial utterance in relation to the power of a legislative body to appoint persons to office may be found to exist, we think, under a constitution like ours, which does not prohibit such appointments, the rule announced in *Biggs* v. *McBride,* 17 Or. 640 (21 Pac. 878, 5 L. R. A. 115), is founded in reason and unassailable upon principle. The following cases support this doctrine : *Board of Revenue* v. *Barber,* 53 Ala. 589 ; *People* v. *Osborne,* 7 Colo. 605 (4 Pac. 1074); *State* v. *Covington,* 29 Ohio St. 102 ; *People* v. *Draper,* 15 N. Y. 532 ; *People* v. *Batchelor,* 22 N. Y. 128 ; *People* v. *Woodruff,* 32 N. Y. 355 ; *People* v. *Pinckney,* 32 N. Y. 377 ; *Sturgis* v. *Spofford,* 45 N. Y. 446 ; *People* v. *Langdon,* 8 Cal. 1 ; *People* v. *Hurlbut,* 24 Mich. 44 (9 Am. Rep. 103) ; *State* v. *Irwin,* 5 Nev. 111; *State* v. *Swift,* 11 Nev. 128 ; *Mayor, etc., of Baltimore* v. *State,* 15 Md.

376 (74 Am. Dec. 572); *Bridges* v. *Shallcross,* 6 W. Va. 562; *Baker* v. *Kirk,* 33 Ind. 517; *State ex rel.* v. *Harrison,* 113 Ind. 434 (3 Am. St. Rep. 663, 16 N. E. 384); *Thorpe* v. *Rutland R. R. Co.,* 27 Vt. 140 (62 Am. Dec. 625). See, also, on this subject, the very able dissenting opinion of Mr. Chief Justice ELLIOTT, in *State ex rel.* v. *Hyde,* 121 Ind. 20 (22 N. E. 644).

It is next maintained that, at the expiration of four years from the date of Compson's appointment, the office became vacant, under the provision of the constitution, Article XV, § 2, which declares that "the legislative assembly shall not create any office, the tenure of which shall be longer than four years." Section 2 of the Act creating the Board of Railroad Commissioners and prescribing its duties reads as follows: "Said commissioners constituting said board shall be chosen biennially by the Legislative Assembly of the State of Oregon, and shall hold their office for and during the term of two years and until their successors are elected and qualified as in this act provided, and if a vacancy occurs by resignation, death, or otherwise, the Governor shall appoint a commissioner to fill such vacancy for the residue of the term:" Hill's Ann. Laws, § 4003. This act manifestly creates an office the term or tenure of which is two years, with a provision that the incumbent shall hold the office until his successor is elected and qualified. But the contention of relator is that the words "until his successor is elected and qualified" may, in consequence of a contingency, serve to prolong the incumbent's term of office, in which case the extension resulting therefrom is as much a part of the entire term as any portion of the period specified in the act, and that, as a consequence, it is violative of the constitution for anyone to hold an office created by the legislative assembly more than four years by virtue of one election or appointment. In other

words, the contention is that the provision that the incumbent shall hold over until his successor is elected and qualified cannot extend his right, under any circumstances, more than four years; that Compson could legally hold the office by virtue of his appointment for the fixed term of two years, and, in consequence of the failure of the legislative assembly of 1895 to appoint his successor, two years longer, but at the expiration of four years the office became vacant under the constitution, notwithstanding the provision that he should hold until his successor is elected and qualified. The logic of the argument is that the legislature may create an office the term of which shall be four years, and may reserve to itself the right to select the incumbent; but it is inhibited, as between the officer and the appointing power, from providing that the incumbent of such office shall hold after the expiration of that time, or until his successor is elected and qualified. This position is probably sound, unless Section 1 of Article XV of the Constitution, which provides that "All officers, except members of the legislative assembly, shall hold their offices until their successors are elected and qualified," applies to the office of railroad commissioner.

The law seems to be settled that, where the duration of an official term is limited by the constitution, the office becomes vacant at the expiration of that term, even though the legislature has provided that the incumbent shall hold until his successor is duly qualified : 19 Am. & Eng. Enc. Law (1 ed.), 433 ; *State* v. *Howe*, 25 Ohio St. 588 (18 Am. Rep. 321) ; *State ex rel.* v. *Brewster*, 44 Ohio St. 589 (9 N. E. 849). But when the constitution in one clause inhibits the legislature from creating an office the tenure of which shall be longer than a specified number of years, and in another provides that such officer shall hold until his successor is qualified, the two

provisions are to be read and interpreted together, and the result is that the legislature is inhibited from creating an office the tenure of which shall be for a longer period than the time specified in the constitution; but if, at the expiration of that period, no successor has been elected and qualified, the incumbent holds over by the paramount right of tenure, which the constitution supplies, until he is superseded by a qualified successor, appointed or elected under some provision of law, and a failure of the particular authority to elect his successor does not create a vacancy in the office: *State ex rel.* v. *Harrison,* 113 Ind. 434 (3 Am. St. Rep. 663, 16 N. E. 384). This position is practically undisputed by counsel for the relator, and it is substantially conceded that, if Section 1 of Article XV of the Constitution applies to officers appointed by the legislature, there was no vacancy in the office of railroad commissioner at the time of Wagner's appointment, and as a consequence he has no right to the office. But their contention is that the constitutional provision under which officers are allowed to hold over until their successors are elected and qualified has no application to the office of railroad commissioner, for the following reasons: First, because it was intended to and does apply to the incumbents of such offices only as are created by or provided for in the constitution itself; and, second, to such offices as are elected by the electoral body at large, and not by the legislative assembly. But this construction, it seems to us, gives to the language of the section a restricted meaning authorized neither by the words nor the context. It does not say that the officers named or provided for in the constitution, or those elected by the people, shall hold until their successors are elected and qualified, but that all officers, except members of the legislature, shall do so. Its language is plain, simple, unam-

biguous, and easily understood. That a railroad commissioner is an officer is undisputed, and it seems to us that he must necessarily come within the terms of this section of the constitution.

Attention is specially directed to the use of the words "elected and qualified" in the section referred to, and it is insisted that as so used they refer solely to the selection by the people, and references are made to many instances in which the terms "election" and "appointment" are used in the various provisions of the constitution. The word "election," in the strict sense, undoubtedly means the choice of an officer in the exercise of which all the qualified electors have an opportunity to participate, while the word "appointment" is understood to mean the selection by one or more persons, who have been commissioned for that purpose, of another, who, by virtue of the choice, represents or may exercise some authority over the persons delegating the power to make the appointment: Throop, Pub. Off. § 84; *Speed* v. *Crawford*, 3 Metcalf (Ky.), 207; *State* v. *McCollister*, 11 Ohio, 46; *Gosman* v. *State*, 106 Ind. 203 (6 N. E. 349); *Kimberlin* v. *State ex rel.* 130 Ind. 120 (30 Am. St. Rep. 208, 14 L. R. A. 858, 29 N. E. 773); *McGruder* v. *Swan*, 25 Md. 173; *State* v. *Irwin*, 5 Nev. 111; *Conger* v. *Gilmer*, 32 Cal. 75; *Wickersham* v. *Brittan*, 93 Cal. 34 (15 L. R. A. 106, 28 Pac. 792, and 29 Pac. 51); *Carpenter* v. *People*, 8 Colo. 116 (5 Pac. 828). In *People* v. *Langdon*, 8 Cal. 1, it was insisted that the words "elected" and "appointed," as used in a section of the California Constitution, were not equivalent expressions of the meaning intended to be imparted by the framers of that instrument; but Mr. Chief Justice MURRAY, in answering the argument, says: "Much stress is laid upon the word 'appointed,' as used in this section. This is mere hypercriticism. The former decisions of this court have substantially set-

tled this point.   The word 'appoint' was probably used
as a more comprehensive term to convey the idea of a
mode of constituting or designating an officer, whether
by election or otherwise.   In fact, the words 'elect' and
'appoint' seem to have been regarded as synonymous by
the convention.''   The word ''elect'' simply means to
pick out, to select from among a number, or to make
choice of, and is synonymous with the words ''choose,''
''prefer,'' ''select,'' and it was evidently used in this
sense in the constitution.

While the words '' elect '' and '' appoint '' are not
ordinarily synonymous, we think a careful examination
of the language of our constitution will show that, in
some instances, the framers of that instrument have
used them as such.   Thus, it is provided in Constitution,
Article II, § 15, that ''in all elections by the legislative
assembly, or by either branch thereof, votes shall be
given openly or *viva voce*,'' etc.   It might seem, at first
view, that the word '' elections,'' as here used, was lim-
ited to the choice of officers of the house or senate by
the members thereof, but if this be so, Section 30, Article
IV, which reads :  '' No senator or representative shall,
during the time for which he may have been elected, be
eligible to any office the election to which is vested in
the legislative assembly,'' etc.,—would prevent the
organization of either branch of the legislature, thus
showing that under the definition hereinbefore given
the word '' elections '' in the first clause evidently means
'' appointment '' only.   So, too, the legislative assembly
is authorized to '' elect '' a Governor from the candidates
who have received an equal and the highest number of
votes cast therefor (Section 5, Article V), thereby indi-
cating that the phrase '' to elect,'' as used in this section
of the organic act, undoubtedly means '' to appoint.''

34 OR.—3.

Other references might be made, but these are sufficient to show that the word "election" is not used in the constitution to designate a choice by the electoral body at large, but that a selection or choice made by the legislative assembly is as much an election as a choice by the people. This is the construction given to a similar clause in the Constitution of Indiana by the supreme court of that state in the case of *State ex rel.* v. *Harrison*, 113 Ind. 343 ( 3 Am. St. Rep. 663, 16 N. E. 384 ), and the argument of Mr. Justice MITCHELL in that case is, in our opinion, unanswerable. The provisions of the Constitution of Indiana, prohibiting the creation of an office by the legislature, the tenure of which shall be longer than four years, and permitting an officer to hold over until his successor is elected and qualified, are identical with ours ; and the decision in the case referred to is a complete answer to every position open to the relator in this case, except that the constitutional provision under which officers are empowered to hold over until their successors are elected and qualified has application solely to such officers as are provided for in the constitution. In this respect only the Indiana Constitution differs from ours. It declares that " whenever it is provided in the constitution, or in any law which may be hereafter passed, that any officer other than a member of the general assembly shall hold his office for any given term, the same shall be construed to mean that such officer shall hold his office for such term and until his successor shall be elected and qualified" (Artice XV, Section 3), while ours provides that " all officers," etc., which, it seems to us, is practically the same thing.

Again, it is insisted that the constitutional provision that officers shall hold until their successors are elected and qualified, and the provision of the act creating the Board of Railroad Commissioners to the same effect, were

designed only to cover a possible interregnum between the expiration of a fixed term and the qualification of the incumbent's successor, and that they do not contemplate an indefinite holding, and, therefore, the Governor had a right to assume there was a vacancy in the office of railroad commissioner, and to appoint Compson's successor. But the vice of this position lies in the fact that the Governor is only authorized to make an appointment in case of a vacancy in the office, and there can be no vacancy as long as Compson has a legal right to continue in possession thereof, and is qualified to exercise its powers (*Johnston* y. *Wilson*, 2 N. H. 202 [9 Am. Dec. 50]; *People* v. *Whitman*, 10 Cal. 38; *Commonwealth* v. *Hanley*, 9 Pa. St. 513; *Gosman* v. *State*, 106 Ind. 203 [6 N. E. 349]; *Ex parte* Lawhorne, 18 Grat. 85; *Johnson* v. *Mann*, 77 Va. 265); and, as we have seen, he has the right, under both the Constitution and the statute, to continue in possession of the office until his successor is elected and qualified in the manner provided in the act creating the office.

It is also maintained that the sureties on Compson's official bond are not liable for defalcations occurring after the expiration of the two-years' term for which he was elected, and that by reason of his failure to renew the undertaking there was such a vacancy in his office as would enable the Governor to fill it by appointment. But our attention has not been called to any provision of law requiring an officer who holds over after the expiration of his term to renew his official bond, or declaring that the office shall become vacant in case he fails to do so, and, without such a provision, it is clear that the Governor could not declare a forfeiture or oust Compson from the office to which he had been appointed by the legislative assembly. The Governor could appoint only in case of a vacancy in an office for a failure to renew the

bond, only by virtue of some provision of law to that effect. As to whether a railroad commissioner should be required to execute a bond at all was a legislative question, and if it saw proper to suffer him to hold over after the expiration of his prescribed term, until his successor should be appointed and qualified, without making any provisions requiring him to renew his bond, or declaring the office vacant in case he should fail to do so, it is manifest that no vacancy could occur, although it may be, as a matter of law, that the sureties on his official bond are bound only for defalcations occurring during the original term for which he was chosen. No error having been committed in sustaining the demurrer, it follows that the judgment is affirmed.

AFFIRMED.

Decided 24 October, 1898.