# CHARLESTON.

HUNTER v. TRUSTEES OF BERKELEY SPRINGS.

Submitted November 1, 1899—Decided December 9, 1899.

BERKELEY SPRINGS - *Bath Keeper—Term of Office.*

Section 5, chapter 202, Acts 1882, in providing that the trustees of Berkeley Springs shall annually elect a bath keeper, who shall continue such until the election of his successor, is merely directory as to the time of such election, and was not intended to render such bath keeper, when elected, independent of such trustees for the annual period of one year, but was intended to place his election and after-continuance in office at their pleasure, for the better promotion of the purposes of their trust. . (p. 347).

Application of Charles E. Hunter for a writ of *mandamus*, against the trustees of Berkeley Springs.

*Dismissed.*

FLICK, WESTENHAVER & NOLL, for petitioner.

FAULKNER, WALKER & WOODS, for respondents.

DENT, PRESIDENT:

Charles E. Hunter prays a writ of *mandamus* to compel the trustees of Berkeley Springs to admit and induct him into the office of bath keeper for said springs, which office is now held by Michael A. Pentony. The respondents appeared, and filed their answers, and entered a motion to quash the alternative writ, and the case was submitted for decision. The facts, as appears from the alternative writ, are as follows, to wit: At a regular meeting of said trustees, held in April, 1897, Michael A. Pentony was elected bath keeper for the period of one year, or until the election of his successor. At the regular meetings in April, 1898, and 1899, no action was taken by the trustees, but said Pentony was allowed to continue in the office. In July, 1899, at a special meeting of the trustees, duly and legally called and held, the relator, Charles E. Hunter, was elected bath keeper from the 1st day of August, 1899. That at an adjourned meeting held on the 12th of July, 1899, the trustees reconsidered the election of the relator, and continued the said Pentony in the office. This last action on the part of the trustees the relator claims was illegal and void, for the reason that he had already been chosen bath keeper, and the trustees had no legal authority to rescind such election, but that he is entitled to hold such office from the 1st day of August, 1899, to the 1st day of August, 1900, or until his successor is elected. The relator insists that section 5, chapter 202, of the Acts of 1882, which is in these words, to wit, "A bath-keeper shall be elected annually by the board, who shall continue such until the election of his successor," fixes an annual term for this officer, and, after he has once been chosen, he is entitled to the office for such period, and thereafter until his successor is elected. This is a very narrow and restricted view to take of this provision, but, admitting it to be correct, is the relator en-

titled to the office? Section 7 of the chapter provides: "That the board of trustees shall meet at least once in every year, the time and place of meeting to be fixed by an order of the board. * * * The first meeting of the board under this act shall be held on the first Tuesday in April, one thousand eight hundred and eighty-two, or as soon thereafter as convenient, and not less than five members shall constitute a quorum at any meeting." Taking these provisions together, it was plainly the intention of the legislature that the bath keeper was to be elected annually, at the regular annual meeting. This the trustees appear to have done in so far as Michael A. Pentony is concerned. He was elected at the regular annual meeting held in April, 1897. The next two annual meetings were permitted to pass without an election, presumptively because the trustees were satisfied to allow Pentony to continue as bath keeper under his original election. Having failed to elect at their regular annual meeting, the relator claims that they had a right to elect at any special meeting thereafter. But this does not follow. On the contrary, their failure to elect at their regular annual meeting, and permitting Pentony to hold over, according to the strict construction insisted on by the relator, he would be entitled to hold the office until the next regular annual meeting of the trustees, for they would be without authority to appoint his successor except in case of a vacancy at a special meeting; in short, that the allowance of the annual meeting to go by without an election is equivalent to the re-election of the incumbent, who holds over by appointment of law. The right to hold over is "held by the same title, or by as high and lawful tenure, after the prescribed term, until the title of a duly elected and qualified successor attaches, as before and during such term," and continues "until a qualified successor has been elected by the same electoral body as that to which the incumbent owes his selection, or which, by the law, is entitled to elect a successor." *State* v. *Harrison*, 113 Ind. 234, (16 N. E. 384); *State* v. *Howe*, 25 Ohio St. 588; *Hubbard* v. *Crawford*, 19 Kan. 570; *Gosman* v. *State*, 106 Ind. 203, (6 N. E. 349); *Ex parte Lawhorne*, 18 Gratt. 85; *Johnson* v. *Mann*, 77 Va. 265; *State* v. *Jenkins*, 43 Mo. 261. Of course, it is the same

body in this case that holds the special meeting as well as the regular meeting. When the law required them to fix a time and place for the regular annual meeting by order, and also provided for the annual election of bath keeper, it undoubtedly intended that such annual election should take place at such regular annual meeting and at no other time; just as regular elections by the people, the legislature, or other bodies empowered to elect officers at a fixed time and place. If they fail to elect at such time and place, the power to elect is gone until the next regular period of time has elapsed, and the incumbents in office, empowered by law to do so, hold until their successors are elected in accordance with the provisions of law. So that Pentony would be entitled to hold over until his successor is legally elected by the body, and in the manner, and at the time and place, fixed in obedience to law; and the selection of John E. Hunter not being at the regular annual meeting, but at a special meeting called, without regard to a fixed annual time or place, is void. But it seems to me that this section of the statute will bear a more liberal construction, and this is that the direction to the trustees to elect a bath keeper is mandatory, but to do so annually is merely directory, so as to always have a bath keeper in charge, especially during the bathing season of the year, beginning in the spring and ending in the fall. This bath keeper, so elected is to hold his office until his successor is elected. He is not chosen for any given term, but holds his office during good behavior, at the pleasure of the trustees. He is responsible to them, and may be displaced at any time, and have his place filled by another, but in case of vacancy there must be always an annual election. The fact that the legislature did not provide for the removal of such bath keeper for cause, or provide for the filling of casual vacancies, upholds this construction; otherwise, a bath keeper once appointed, competent or incompetent, moral or immoral, present or absent, dead or alive, would be entitled to hold the office for one year, and while he might neglect its duties, yet, like the ancient guardianship, he could not resign until the expiration of his term. The word "annually," if used to fix the tenure of office at one year, makes the clause "until his successor is elected" unnecessary,

for, if a successor is elected at the appointed time every year, the necessity for these words is destroyed. "Until the election of his successor" is equivalent to "at the pleasure of the trustees," which pleasure is to be made known by the election of such successor. Laws prescribing the duties of public officers are usually peremptory or mandatory, while those fixing a time for the performance of such duties are directory. 23 Am. & Eng. Enc. Law, 458. A doubtful provision in a statute should be so construed as to effect the purpose of its enaction. *Id.* 319. The trustees were charged with the duty of superintending and controlling Berkeley Springs and the baths connected therewith for public convenience and health, and clothed with all necessary power to render their trust effective for the purposes for which it was created. To accomplish these ends, they must have at all times an efficient, accommodating bath keeper, acceptable to the traveling public in search of health and relief from bodily afflictions. An obnoxious, inefficient, or inattentive bath keeper could entirely drive away and destroy the patronage of the springs; and, if the trustees had not the power of removal, they would be entirely at his mercy during the term of his office. Thus would the purpose of their creation be entirely at the mercy of their appointee. Such is not a reasonable, but rather an absurd, construction of the provisions involved. The true construction, and the one in harmony with the end to be attained, is that the bath keeper held his position, not for any given term, but at the pleasure of the trustees until the election of his successor. By either construction, the alternative writ must be quashed, and the petition dismissed.

*Dismissed.*