[No. 7981. Department Two. June 14, 1909.]

THE STATE OF WASHINGTON, *on the Relation of George F. Vanderveer as Prosecuting Attorney for King County, Appellant*, v. MATT H. GORMLEY, *Respondent*.[1]

OFFICERS—COUNTIES—TREASURER—TERM OF OFFICE—VACANCY. Under Bal. Code, § 425 providing for the election of a county treasurer "who shall hold office for the term of two years, and until his successor is elected and qualified," and Bal. Code, § 1548, providing that every office shall become vacant upon the incumbent's refusal or neglect to take his oath of office or give or renew his official bond, no vacancy occurs authorizing an appointment by the county commissioners, upon the refusal of an officer elect to qualify, since he was not an "incumbent"; and the term of his predecessor continues until a successor, "elected" by the same electoral body which elected the incumbent, has qualified (Dunbar and Fullerton, JJ., dissenting).

SAME—TERMS—HOLDING OVER—SUCCESSIVE TERMS. Const. art 8, § 6, providing for the biennial election of county officers, and art. 11, § 5, providing that no county officer shall hold office for more than two terms in succession, does not prevent the legislature from making the term of office two years and "until his successor is elected and qualified"; nor does it prevent a second term incumbent from holding over for two years more, on the refusal of his successor to qualify (DUNBAR and FULLERTON, JJ., dissenting).

COURTS—APPELLATE COURTS—ORGANIZATION—SEPARATE DEPARTMENTS—QUORUM. Under Const., art. 4, § 2, providing for five judges of the supreme court "a majority of whom shall be necessary to form a quorum," and which further provides that the legislature may increase the number of judges, "and may provide for separate departments," it was competent for the legislature, by Laws 1909, pp. 33-37, to increase the number to nine judges, and provide for two departments of the court, consisting of five judges each, three of whom shall constitute a quorum for the transaction of business in a department; and a litigant is not entitled, as a matter of right, to a rehearing by the full court sitting *en banc*, authorized by section 4 of the act.

Appeal from a judgment of the superior court for King county, Gay, J., entered February 18, 1909, in favor of the defendant, after a trial upon stipulated facts, dismissing proceedings in the nature of *quo warranto*. Affirmed.

[1]Reported in 102 Pac. 435.

*George F. Vanderveer, Robert G. Prigmore, S. G. Murray,*
and *Walter S. Fulton,* for appellant.   Upon failure of an
officer-elect to qualify, the county commissioners could de-
clare a vacancy.   *King County v. Ferry,* 5 Wash. 536, 32
Pac. 538, 34 Am. St. 880, 19 L. R. A. 500; *Ballard v.
Thompson,* 21 Wash. 669, 59 Pac. 517; *State ex rel. Lysons
v. Ruff,* 4 Wash. 234, 29 Pac. 999, 16 L. R. A. 140.   The
statute creating a vacancy when an officer fails "to give or
renew" his official bond, applies to an officer-elect.   *County of
Wapello v. Bigham,* 10 Iowa 39, 74 Am. Dec. 370; *State ex
rel. Lutfing v. Goetze,* 22 Wis. 348; *State ex rel. Attorney
General v. Matheny,* 7 Kan. 327.   A statute authorizing an
officer to continue in office for a specified term, "and until his
successor is elected and qualified" does not authorize the hold-
ing over for another entire term.   *County of Scott v. Ring,* 29
Minn. 398, 13 N. W. 181; *Welch v. Seymour,* 28 Conn. 387;
*Mayor etc. of Rahway v. Crowell,* 40 N. J. L. 207, 29 Am.
Rep. 224; *Mayor of Wilmington v. Horn,* 2 Harr. (Del.)
190; *Dover v. Twombly,* 42 N. H. 59; *State Treasurer v.
Mann,* 34 Vt. 371, 80 Am. Dec. 688; *County of Wapello v.
Bigham, supra; Bigelow v. Bridge,* 8 Mass. 274; *Chelmsford
Co. v. Demarest,* 7 Gray 1; *Mutual Loan & Building Ass'n
v. Price,* 16 Fla. 204, 26 Am. Rep. 703; *Harris v. Babbitt,*
4 Dill. 185; *People ex rel. Showers v. Taylor,* 57 Cal. 620;
*People ex rel. Drew v. Rodgers,* 118 Cal. 393, 46 Pac. 740,
50 Pac. 668.   There was a vacancy at the end of the two-
year term, and although the respondent was in possession,
he was not an "incumbent" for another term and was not
elected originally for a two-year term and an additional
contingent term of two years more.   *Adams v. Doyle,* 139
Cal. 678, 73 Pac. 582; *Campbell v. Board of Supervisors*
(Cal.), 93 Pac. 1061; *People ex rel. Drew v. Rodgers,* and
*People v. Taylor, supra; People ex rel. Mattison v. Nye*
(Cal.), 98 Pac. 241.   The respondent was not eligible to hold
over for an additional term.   Pierce's Code, § 169 (Const.,
art. 11, § 7); Mechem, Public Officers, § 398.   The prior in-

cumbent has no claim to the title of this term; he is a mere
*locum tenens* holding the office for public convenience until
the vacancy in the term is filled.    *Gosman v. State,* 106 Ind.
203, 6 N. E. 349; *Smith v. Moore,* 90 Ind. 294; *People ex
rel. Drew v. Rodgers, supra; People ex rel. Kelly v. Common
Council,* 77 N. Y. 503, 33 Am. Rep. 659.    "Election" and
"appointment" are synonymous as used in this connection.
*People ex rel. Aylett v. Langdon,* 8 Cal. 1.

*Bausman & Kelleher* and *William Hickman Moore,* for re-
spondent.

PARKER, J.—This is a proceeding in the nature of *quo
warranto,* prosecuted in the name of the state upon relation
of the prosecuting attorney of King county, for the purpose
of ousting the respondent from the office of treasurer of said
county.    The cause was disposed of in the superior court
upon facts stipulated by the parties, which, so far as neces-
sary for our review, are briefly stated as follows:    At the
general election in the year 1904, the respondent was duly
elected treasurer of King county, thereupon duly qualified
as such, and held office for the ensuing term commencing on
the second Monday of January, 1905.    At the general elec-
tion in the year 1906, the respondent was duly elected treas-
urer of King county for a second consecutive term commenc-
ing on the second Monday of January, 1907, thereupon he
duly qualified as such, and has ever since held said office,
thereby having become the incumbent for two terms in suc-
cession.

At the general election in the year 1908, George F. Russell
was duly elected treasurer of King county for the ensuing
term, and on the 11th day of January, 1909, being the second
Monday of January, and the date upon which the term of
office for which he was elected would have commenced, he per-
sonally appeared before the board of county commissioners
for King county and declared his intention not to take the

35—53 WASH.

oath of office or file the official bond required by law of county treasurers; he having since his election received and accepted the appointment of postmaster of the city of Seattle, which office he now holds. After the 11th day of January, 1909, with the approval of the board of county commissioners, the official bond of the respondent as county treasurer was continued in force, and is now in full force and effect. On the 13th day of January, 1909, the board of county commissioners of King county, in regular session, by resolution declared that a vacancy had occurred in the office of county treasurer by reason of the failure of Russell to qualify, and thereupon appointed J. P. Smith to fill such declared vacancy, and thereupon J. P. Smith took the oath of office, and executed and filed the official bond required by law of county treasurers, and demanded of the respondent that he vacate and deliver up said office and the control thereof, which demand the respondent refused, and continues in possession of said office, performing the duties and functions thereof. Upon these facts the superior court rendered judgment in favor of respondent and dismissed the proceeding, from which the relator appeals to this court.

As stated in appellant's brief, "The sole question in this case is whether or not there was a vacancy in the office of county treasurer of King county on the 13th day of January, 1909, which the board of commissioners was authorized to fill by appointment." Which in turn depends upon the expiration of the second elective term of the respondent as county treasurer. If that term has expired there is a vacancy warranting the appointment of a successor to the respondent; otherwise there is no vacancy to fill and no authority for the appointment. The law which fixes the term of office of county treasurer being § 4224 of Pierce's Code (Bal. Code, § 425), reads as follows:

"Sec. 4224. At the first election in each county, and every two years thereafter, there shall be elected a county treasurer, who shall have the qualifications of a voter, and shall

continue in office for the term of two years, and until his successor is elected and qualified."

This, it is contended by appellant, must be construed in the light of the provisions of the law relating to vacancies in office, being Pierce's Code, § 4787 (Bal. Code, § 1548), which in so far as applicable here, reads as follows:

"Sec. 4787. Every office shall become vacant on the happening of either of the following events before the expiration of the term of such officer. First, the death of the incumbent. . . . sixth, his refusal or neglect to take his oath of office, or to give or renew his official bond, or to deposit such oath or bond within the time prescribed by law."

It is conceded that the power of appointment in case of vacancy resides in the board of county commissioners, so we need not notice the law on that subject. The question then arises upon the concluding words of § 4224, *"For the term of two years, and until his successor is elected and qualified."* Appellant contending that the word "elected" means "appointed," in the light of § 4787 relating to vacancies; while respondent contends it means "elected by the people," and that until some person qualifies by taking oath of office and giving bond, who has been elected by the people, the term of an incumbent who is in office by election, as he is, is not terminated. The principal here involved has not been before this court under exactly the same condition as this case presents, but it seems to us that the force and effect of the concluding words of § 4224, fixing the term of office, has been clearly settled by this court in the case of *State ex rel. Meredith v. Tallman,* 24 Wash. 426, 64 Pac. 759, where the law fixing the term of county superintendent of schools in almost the exact words here involved, was construed by the court, using this language:

"When, therefore, the legislature used the words, 'whose term of office shall begin on the second Monday in January next succeeding his election and continue for two years and until his successor is elected and qualified,' it was not meant thereby that his term of office should be two years and no

more.   The phrase, 'and until his successor is elected and qualified' means something.   It was not used idly.   If so, the term was not fixed at two years and no more, but was two years and more; the further time depending upon the contingency not only of an election, but also of the qualification of the person elected, which might be one day, one month, or any number of months.   A person elected to an office, with the term so fixed at two years and such further time, would be entitled to hold the full two years and such further time, viz., until his successor had been elected and also had qualified."

Numerous authorities are there cited in support of that holding, and they need not be further reviewed by us at this time.   In that case the law had been changed so that the term of office commenced in August instead of January, and there was no provision of law providing for the intervening period other than the concluding words of § 4224 above quoted, which were held to extend the term so that no vacancy occurred authorizing the appointment by the county commissioners as they attempted to do in that case.   To avoid the force of that decision counsel for appellant argue that that case did not involve any of the events which the law declares shall create a vacancy in office.   It seems to us, however, the question of what constitutes the term of office no less depends upon the language of the law defining the term of office.   It is not a question of a vacancy occurring under § 4787 so much as it is a question of what is the term of office.   We do not think the sixth subdivision of the section relating to vacancies, above quoted, can have any influence upon the tenure of office of one whose term has not expired and who has not neglected to do any of the things therein mentioned.   It seems plain under the decision in the *Tallman* case, that the respondent's term of office, since he held by election, in no event expires until his successor is elected and qualified, though he may lose his right to the office by failure to do some of the things prescribed in § 4787, resulting in a vacancy.   That law, however, does not pretend to fix the

duration of the term of office, but only defines the events which result in a vacancy during the term of an incumbent.

Counsel for appellant, however, strenuously argue that the law relating to vacancies should not be given this restricted meaning by applying it only to persons actually in the possession of and performing the functions of office; their principal contention being that the word "incumbent" does not necessarily mean the one who is in possession of the office and performing its functions, but may also mean the one who has been elected and not yet qualified; that any other construction renders a part of the section, at least the sixth subdivision, meaningless; and that the words "his refusal or neglect," etc., can apply only to one who has been elected and not yet qualified.

At first thought the word "incumbent," in connection with this provision, might seem to apply only to persons who are elected and have not yet qualified, but when other possible conditions arising under our laws are noticed, it is easy to see the virtue and force of this provision without giving the word "incumbent" any other than its ordinarily accepted meaning. For instance, it is a matter of common knowledge that an incumbent actually in office is often reelected for a succeeding term. In such case he is not permitted to continue in office upon his former oath and bond but must again qualify. He cannot decline to qualify and continue in office under his former tenure. One in this situation must hold under his new tenure or not at all. The term of office will not expire until the successor, though it be himself, is elected and qualified under the decision in the *Tallman* case, but unless he qualifies under his new tenure, he forfeits the right to hold under either. Again, it seems to be the settled law of this state, that the sureties upon official bonds are not liable for the acts of an incumbent after the expiration of the term as it would expire in the usual course of events by the election and qualification of a successor, that is, the term of the bond ends with the stated portion of the officer's term,

and does not continue through the contingent portion thereof, "until his successor is elected and qualified." *King County v. Ferry,* 5 Wash. 536, 32 Pac. 538, 34 Am. St. 880, 19 L. R. A. 500; *Ballard v. Thompson,* 21 Wash. 669, 59 Pac. 517. And should the elected successor not qualify, resulting in the continuance of the then incumbent's term, such incumbent's right to hold the office would depend upon the renewing of his official bond; and if he failed in this, there would result a vacancy as provided by the sixth subdivision of § 4787 above quoted. Again, the amount of an official bond and the sufficiency of the sureties thereon are not determined once for all at the beginning of a term, but the county commissioners have the power from time to time as they may deem necessary for public security, to require a new or additional bond from the incumbent. Pierce's Code, §§ 3268, 3269 (Bal. Code, §§ 1522, 1523). And a failure of the incumbent to comply with such requirement would result in a vacancy in the office under the provisions above quoted. So it seems to us there is no reason for giving to the word "incumbent" any other than its ordinarily accepted meaning, and this view we think gives to the law relating to vacancies all the force and effect it was intended to have. At the same time it leaves the meaning of § 4224, which fixes the term of office, quite plain, as it was so regarded by this court in the *Tallman* case. By the Standard dictionary the word "incumbent" is defined as "One who holds an office or performs official duties." Decisions from other states have been brought to our notice tending in a measure to support the contention of both appellant and respondent upon this phase of the case, but in view of the plain provisions of our law fixing the elective term, and the former holding of this court in the *Tallman* case as to the force and effect of the words "Until his successor is elected and qualified," we deem it unnecessary to review them here. Whether the word "incumbent" refers exclusively to one actually in possession of the office, or may under certain circumstances refer to one elected and about

to enter upon the duties of office, it in no event can lessen the duration of the term of the office as plainly fixed by our law.

In view of the holding of this court in the *Tallman* case, it hardly seems necessary to further notice the contention made by appellant to the effect that "appointment" and "election" are the same within the meaning of § 4224 above quoted. There may sometimes in a statute be an indiscriminate use of these words so as to render them in the particular instance substantially synonymous; but when the word "elected" is used in this connection, we believe it is settled, by the weight of authority, that it means elected by the same electoral body which elected the incumbent whose term of office is thus prescribed. As stated by the supreme court of Indiana in *Kimberlin v. State*, 130 Ind. 120, 29 N. E. 773, 30 Am. St. 208, 14 L. R. A. 858:

"The adjudicated cases seem to be harmonious in holding that where one is lawfully in the possession of an office, under a constitutional or statutory provision to the effect that he shall hold until his successor is elected and qualified, his right to hold over continues until a qualified successor has been elected by the same electoral body as that to which such incumbent owes his election, or which by law is entitled to elect a successor."

See, also, *State ex rel. Chenoweth v. Acton*, 31 Mont. 37, 77 Pac. 299; *Koerner v. State*, 148 Ind. 158, 47 N. E. 323; *Magruder v. Swann*, 25 Md. 173; *State ex rel. Sheets v. Spiedel*, 62 Ohio St. 156, 56 N. E. 871; *Commonwealth v. Hanley*, 9 Pa. St. 513; *People v. Tilton*, 37 Cal. 614; *State ex rel. Wagner v. Compson*, 34 Ore. 25, 54 Pac. 349.

It is contended that the respondent is not eligible to hold the office of county treasurer at this time, since he has now been an incumbent of the office for more than two terms of two years each, and upon this contention appellant invokes the provision of § 7, art. 11 of the constitution of the state, which reads: "No county officer shall be eligible to hold his office for more than two terms in succession." But it seems

plain that the *Tallman* case has also disposed of this conten-
tion; since, under the holding of that case, the second term
of respondent's incumbency as fixed by the statute has not
yet expired; but in this connection it was contended upon
the oral argument, that the legislature had no power to fix
the term at more than two years, by reason of the provision
of § 8, art. 6 of the constitution, which, among other things,
provides: "All elections for such officers [county officers]
shall be held biennially." This provision, however, must be
read in connection with § 5, art. 11 of the constitution, which
provides, relative to county officers, that the legislature
"shall prescribe their duties and fix their term of office." It
is possible that the legislature has not the power to fix the
term of office of county officers so as to take away from the
people the right to have biennial elections therefor, but sub-
ject to this right, it seems plain the legislature has power
to fix the term and include in the term any contingent period
dependent upon the failure of an elected officer to qualify;
hence the legislature has not exceeded its power in fixing
the term as provided by § 4224 above quoted. In the *Tall-
man* case above quoted from, this court in effect holds that
the legislature had the power to fix the term, though it does
not appear that this particular phase of the question was
there being considered.

The view we have here taken of the questions involved is not
only in harmony with what seems to us the plain language of
the law fixing the term of office of county treasurers, but is
also in keeping with the spirit of our constitution, which con-
templates that all the principal officers of both the state and
counties shall, as far as possible, be of the people's choice.
County treasurers are specifically named among the officers
which § 5, art. 11 of the constitution provides shall be elected.
The people have the first and highest right to have officers
of their own choosing; and no other method of placing incum-
bents in an elective public office, such as by appointment, can
be tolerated under such a system without doing violence to

the plain spirit of our constitution; save only in cases of va-cancy, which cannot occur as long as one in the office, hold-ing under election by the people, is eligible, duly qualified, and his successor has not been *elected and qualified* in the same manner.    This view also finds support in the decisions of other courts.    *State ex rel. Chenoweth v. Acton, Common-wealth v. Hanley,* and *Magruder v. Swann, supra; Rice v. Stevens,* 25 Kan. 302; *People v. Whitman,* 10 Cal. 38; *State ex rel. Carson v. Harrison,* 113 Ind. 434, 16 N. E. 384, 3 Am. St. 663.

We are of the opinion that the term of office of the re-spondent had not expired when the county commissioners assumed to appoint his successor, and that there was no va-cancy warranting such an appointment.    The judgment of the superior court is therefore affirmed.

RUDKIN, C. J., CROW, and MOUNT, JJ., concur.

DUNBAR, J. (dissenting)—I dissent.    I think the majority opinion is opposed to a proper construction of both the con-stitution and the statute.

ON REHEARING.
[*En Banc.*   Decided October 30, 1909.]   .

PARKER, J.—After the decision in this cause was rendered by Department Two, the appellant filed a petition for re-hearing before the court *en banc,* assigning as grounds there-for the following:

"First:    Because under the terms and provisions of sec-tion 2, article 4, of the state constitution, this court is with-out right, power, or authority, to render or pronounce a de-cision unless a majority of the judges constituting the court join and concur therein, and therefore, the decision herein-before undertaken to be rendered on June 14, 1909, wherein only four out of nine judges joined and concurred, constitutes no binding or valid decision.

"Second:    Because said decision so undertaken to be ren-dered and pronounced, as aforesaid, does not conform to, but is at variance with, the provisions of the constitution and

statutes of this state pertaining to the matters in contro-
versy."

The court being particularly desirous of having the ques-
tion raised by the first ground assigned finally determined by
the full court, argument was invited thereon before the court
*en banc*, which was heard October 22, 1909.

As to the number of judges constituting a court and its
division into separate departments, section 2 of article 4 of
the state constitution, provides:

"The supreme court shall consist of five judges, a majority
of whom shall be necessary to form a quorum and pronounce
a decision. . . . The legislature may increase the num-
ber of judges of the supreme court from time to time, and
may provide for separate departments of said court."

The legislature, by chapter 24, pp. 33-37, Laws of 1909,
increased the number of judges of the court from seven to
nine and provided for separate departments, and also for the
sitting of the court *en banc*. In so far as it relates to the
powers of the court *en banc* and in departments, the act
provides:

"Sec. 3. There shall be two departments of the Supreme
Court, denominated respectively Department One and De-
partment Two. The Chief Justice shall assign four of the
associate judges to each department and such assignment
may be changed by him from time to time: Provided, That
the associate judges shall be competent to sit in either de-
partment and may interchange with one another by agree-
ment among themselves, or if no such agreement be made, as
ordered by the Chief Justice. The Chief Justice may sit in
either department and shall preside when so sitting, but the
judges assigned to each department shall select one of their
number as presiding judge. Each of the departments shall
have the power to hear and determine causes, and all questions
arising therein, subject to the provisions in relation to the
court *en banc*. The presence of three judges shall be neces-
sary to transact any business in either of the departments,
except such as may be done at Chambers, but one or more of
the judges may from time to time adjourn to the same effect
as if all were present, and a concurrence of three judges shall

be necessary to pronounce a decision in each department: Provided, That if three do not concur, the cause shall be reheard in the same department or transmitted to the other department, or to the court *en banc*.

"Sec. 4. The Chief Justice shall from time to time apportion the business to the departments, and may, in his discretion, before a decision is pronounced, order any cause pending before the court to be heard and determined by the court *en banc*. When a cause has been allotted to one of the departments and a decision pronounced therein, the Chief Justice, together with any two associate judges, may order such cause to be heard and decided by the court *en banc*. Any four judges may, either before or after decision by a department, order a cause to be heard *en banc*. . . . .

"Sec. 5. The Chief Justice, or any four judges, may convene the court *en banc* at any time, and the Chief Justice shall be the presiding judge of the court when so convened. The presence of five judges shall be necessary to transact any business, and a concurrence of five judges present at the argument shall be necessary to pronounce a decision in the court *en banc*: Provided, That if five of the judges so present do not concur in a decision, then reargument shall be ordered and all the judges qualified to sit in the cause shall hear the argument, but to render a decision a concurrence of five judges shall be necessary; . . ."

It is contended by learned counsel for appellant that while, by authority of this constitutional provision, the legislature may increase the number of judges and provide for separate departments of the court, a majority of all of the judges of the court are necessary to pronounce a decision in all cases, whether by a department or *en banc*, and that in so far as the act attempts to confer power upon a less number than a majority of the whole court to render a final decision, it is unconstitutional.

This contention is based upon the words in the first part of the constitutional provision: "A majority of whom shall be necessary to form a quorum and pronounce a decision." We think this provision has particular reference to the court as originally created, and before division into departments, and does not mean under all circumstances, regardless of the num-

ber of judges and departments, a majority of the whole court shall be necessary to pronounce a decision. To hold according to appellant's contention would render the latter part of the section relating to departments, the number of which are not limited, of little avail in accomplishing the purpose evidently intended. The evident purpose of the framers of the constitution was to enable the legislature to provide for an increase in the number of judges, and also an organization of the court into *separate departments*, to the end that the increase in litigation, which it was anticipated would occur with the future growth of the state, could be properly cared for. Now, when the court is divided into separate departments, it is manifest that there cannot be a majority of all the judges in each department at the same time. Hence, if the contention that a majority of all the judges are necessary to a decision be upheld, there would be at least one department without power to pronounce a decision even by its unanimous vote. We think it was contemplated that separate departments might be provided for, each with full power to hear causes and pronounce decisions independent of the other, and at the same time.

It is argued that since there is no limit to the number of departments the legislature may provide for, it might go to the extent of providing for departments consisting of even less than three judges, and thus result in decisions being rendered by a less number than a majority of the court as originally created, if we should hold that less than a majority of the whole can pronounce a decision. The terms of this act are not such that we are called upon to determine such a question at this time. There may be sound reason for contending that under no circumstances can less than three judges pronounce a decision, in view of the words in the constitution: "The supreme court shall consist of five judges, a majority of whom shall be necessary to form a quorum and pronounce a decision." If this be the spirit of the constitution, then this act providing for departments and defining

their powers is clearly within that spirit, for by its terms, "The presence of three judges shall be necessary to transact any business in either of the departments, except such as may be done at Chambers," and "A concurrence of three judges shall be necessary to pronounce a decision in each department." So that a litigant is in as favorable position, as to the least number of judges to whom he can be compelled to submit his cause, and also as to the least number of judges who can pronounce a decision thereon, as he was when the court existed under the constitution before an increase in its membership and its division into departments by the legislature. We are of the opinion that the provisions of the act providing for separate departments of the court and defining the powers of the departments acting separately is not unconstitutional, and that a litigant is not entitled to a hearing before the court *en banc* as a matter of right because judgment may have been pronounced in his case by the concurrence of a less number of judges than a majority of the whole court.

Notwithstanding our views upon the question raised by the first ground in the petition for rehearing, we have heard argument sitting *en banc* upon the merits, and adopt the views of Department Two as expressed in their decision of June 14, 1909, and the judgment of the superior court is therefore affirmed.

RUDKIN, C. J., CROW, MOUNT, and MORRIS, JJ., concur.

DUNBAR, J. (dissenting)—I concur in the constitutional question discussed, but dissent to the opinion expressed on the merits.

FULLERTON, J., concurs with DUNBAR, J.