[No. 17094.   Department One.   March 13, 1922.]

THE STATE OF WASHINGTON, *on the Relation of W. C. Pendleton, Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY, *Respondent.*[1]

STATUTES (74)—CONSTRUCTION—PROVISOS.   The ordinary purpose of a proviso being to except something from the operation of the act, it should not be given the effect of changing the entire purport of the act.

OFFICERS (19)—TERM—CHANGE.   Under the rule that a statute should not unnecessarily be construed to shorten a term of office, Laws 1921, p. 179, § 2 and p. 180, § 4 [Rem. Comp. Stat., §§ 5144, 5146], changing the time for holding certain municipal elections, and providing for a different time for the beginning and ending of the terms, the incumbents at the time of the taking effect of the act hold to the end of the term for which they were elected, and until the time fixed for the commencement of the term of a successor; and the act was not intended to disturb the rotation of officers theretofore elected at different times.

SAME (19, 20)—TERM—CHANGE—HOLDING OVER.   Laws 1921, p. 179, § 2 and p. 180, § 4 [Rem. Comp. Stat., §§ 5144, 5146], changing the time for holding certain municipal elections and providing a later time for the beginning of the terms, whereby incumbents hold over, does not violate Const., art. XI, § 8, prohibiting the extension of the term of an officer beyond the term for which he was elected, where it appears that all such incumbents were elected for a named period of time "and until their successors are elected and qualified."

Certiorari to review an order of the superior court for King county, French, J., entered February 9, 1922, denying a writ of mandamus.   Affirmed.

*Harry A. Rhodes,* for relator.

*Henry W. Pennock, Malcolm Douglas,* and *Ewing D. Colvin,* for respondent.

*Shorett, McLaren & Shorett, Edward R. Taylor,* and *Preston, Thorgrimson & Turner, amici curiae.*

[1]Reported in 204 Pac. 1053.

FULLERTON, J. — On January 31, 1922, the relator, W. C. Pendleton, tendered for filing to the secretary of the board of directors of Seattle School District No. 1, King county, a petition, signed by the requisite number of voters, praying that he become a candidate for the office of school director for the school district named, "for one of the terms commencing on the first Monday of January, 1923," and praying further that his name be placed upon the official ballot as a candidate for such office to be voted upon at the election to be held on the first Tuesday after the first Monday in May, 1922. The secretary of the board declined to file the petition or to place the name of the relator on the ballot for the stated reason that no vacancy would exist in the office named on the first Monday in January, 1923, or any time prior to the election to be held in May of that year. The relator thereupon instituted proceedings in mandate in the superior court of King county to compel the secretary to comply with the petition. On the hearing, the superior court entered an order denying the writ, and the proceeding now before us is a proceeding brought to review the order.

To an understanding of the controversy presented, it may be well to briefly review the legislation giving rise to it. Prior to its session in 1921, the legislature had, by various enactments, provided for the organization of numerous municipal and quasi-municipal corporations, under the designation of cities, towns, townships, school districts, park districts, irrigation districts, diking improvement districts, river improvement districts, commercial waterway districts, and perhaps others of a like nature, all of which are governed or controlled by elective officers. While the laws authorizing the creation of these municipalities are general, and operative for the benefit of all com-

munities similarly situated, they were usually enacted
at the bequest of some particular locality, and the
election day appointed for the election of the governing
officers was usually fixed to meet the exigencies of the
particular case.   The result was that many of the
municipalities had different election days, and when
these municipalities became overlapping, as many of
them did subsequently so become, the same locality had
a series of elections, imposing upon it needless waste
in the expenditure of time and cost.   The legislature,
for the commendable purpose of consolidating these
numerous elections, enacted the statute found in ch.
61, Laws of 1921, p. 179.   By the second section[1] of the
act it is provided that all elections in the municipalities
enumerated, with certain exceptions not necessary here
to be noticed, shall be held on the first Tuesday after
the first Monday in May in the year in which they may
be called, and by the fourth section (Laws of 1921,
p. 180), it is enacted:

"The term of every city, town and district officer
elected under the provisions of this act shall begin on
the first Monday in June following his election: *Pro-
vided, however,* That any person elected to office at
the first election held under this act shall not take
office until the expiration of the term of office of his
predecessor; and *Provided further,* That any person
whose term of office shall expire prior to the holding
of the first election under this act, shall continue to
hold office until his successor is elected and qualified."
[Rem. Comp. Stat., § 5146.]

The effect of the act, it is at once apparent, was to
change the beginning and ending of the term of office
of every officer whose term did not begin on the first
Monday in June following his election, and, as there
were few of such officers whose terms did so begin, the

[1]NOTE:  See Rem. Comp. Stat., § 5144.

change was practically universal. The situation is further complicated by the fact that the governing body of the several municipalities ordinarily consists of a number of persons holding for terms longer than one year, which commence at different annual periods, so that a less number than the total number of the board, and generally a less number than a majority, are elected annually; the evident purpose of the legislature being to prevent those sudden reversals or changes in governing policies which an election of all or of a majority of the board at one time might entail.

The school district with which we are immediately concerned is a school district of the first class. It is governed by a board of five directors, each elected for a term of three years. By the provisions of the statutes existing prior to the statute cited, these officers were elected at annual elections held on the first Saturday in December of each year, two of such officers being elected at one election, two at another, and one at the third; the term of office beginning on the first Monday in January following the election. While it is not made clear by the record, we gather that one of the present directors was elected at the December election of 1918, that two were elected at the December election in 1919, and that two were elected at the December election in 1920. As the statute of 1921 went into effect in June of that year, no election was held in the following December; the director whose term would naturally have ended in January of 1922, holding over at the present time. His successor will, of course, be elected at the election to be held in the coming month of May.

The specific question presented here is, when are the successors of the directors elected in 1919, and whose terms of office will nominally expire on the first

Monday in January, 1923, to be elected. It is the re-
lator's contention that they are to be elected at the
coming May election, for a term of three years com-
mencing on the first Monday of June following, al-
though, because of the first proviso of § 4 of the act,
they will not take office until the first Monday in Janu-
ary, 1923, the expiration of the term of office of the
directors elected in 1919. On the other hand, the re-
spondent contends that the act contemplates only the
election at the coming May election of a successor to
that director whose term of office has fully expired,
and that the successors to those whose terms expire
in January, 1923, are to be elected at the election in
May, 1923.

While the language of the act seems clear enough
upon its face, it becomes obscure when an attempt is
made to apply it to the different situations to which
it relates. The framers of the act, although recogniz-
ing that there must be necessarily a shortening of the
terms of either the existing officers or of the newly
elected officers, evidently thought that the readjust-
ment would take place at the first election held under
the act, overlooking the fact that the process of ad-
justment would continue in all instances to the second
election, and in some instances to the third and fourth.
The provisos, therefore, speak of the first election
only, making no reference to the subsequent elections
equally affected. The inquiry then is, does the act
mean that at each May election there shall be elected
successors to all officers whose terms will expire be-
tween that election and the next one, the officers elected
at the first election to take office at the expiration of
the terms of their predecessors, and those elected later
to take office on the first Monday in June following
their election, regardless of the unexpired terms; or

does it mean that successors shall be elected to succeed those whose terms have fully expired, permitting the incumbent officers to hold during the interval between the expiration of their terms and the subsequent election.

It seems to us that the latter of these propositions is the one intended by the legislature. Such would be the natural meaning of the words used were it not for the first of the provisos of § 4 of the act. But to say that the proviso has the contrary effect is to allow the proviso to change the entire purport of the act. This is not the usual office of a proviso. Ordinarily its purpose is to except something from the operation of the act which otherwise would be included within it. Here the proviso makes provision only for the first election held under the act. It says nothing concerning other elections. The obvious inference is that these are left to be controlled by the general provisions, and the rule is that statutes will not be construed to shorten the terms of incumbent officers unless the intent is plainly and clearly expressed.

Another circumstance supports the view we adopt. As we have before indicated, the legislature has taken pains to provide for the election of the officers comprising the governing boards of these different municipalities in rotation, that is to say, it has provided that less than a majority of the board shall be elected at any one election. It is at once apparent that, to adopt the other construction suggested, would change the order of these elections. With respect to the school district board now before us, it would be to elect three members at the first election, two at the second, and none at all at the third; whereas the adopted policy has been to elect them in the order of two, two and one. With respect to certain others of the municipali-

ties affected, the result is more marked. In cities of the fourth class, for example, which are governed by a board of five councilmen, all five would be elected at the first election, and none at all at the second. The same result would follow in the election of councilmen in cities of the second class, the only difference being that the councilmen number twelve instead of five. This would be a radical change in existing policy, and it is difficult to believe the legislature so intended.

It is argued that the foregoing construction has the effect to extend the term of an officer beyond the term for which he is elected, and is thus in violation of § 8, art. XI, of the constitution. But an examination of the statutes under which these several boards are elected will show that they are elected not only for a named period of time, but "until their successors are elected and qualified." Since the legislature and not the constitution fixes the term, the time elapsing between the end of the definitely named period and the election and qualification of the successor is a part of the officer's term, and the term is not extended in the constitutional sense by an act of a subsequent legislature fixing the time for the election and qualification of a successor at a later period than it was fixed in the act creating the office. *State ex rel. Meredith v. Tallman*, 24 Wash. 426, 64 Pac. 759; *State ex rel. Vanderveer v. Gormley*, 53 Wash. 543, 102 Pac. 435.

Our conclusion is that the trial court did not err in its judgment, and the same will stand affirmed.

PARKER, C. J., MACKINTOSH, MITCHELL, and HOLCOMB, JJ., concur.