[No. 18781. Department Two. March 3, 1925.]

THE CITY OF HILLYARD, *Respondent,* v. C. E. COLLIER *et al., Appellants.*[1]

OFFICERS (19)—TERM—CHANGE—STATUTES—CONSTRUCTION. Under the act of 1921, Rem. Comp. Stat., §§ 5144, 5186, changing the time for holding certain municipal elections and fixing a different time for the beginning and ending of terms of office, incumbents at the time of the taking effect of the act hold to the end of their terms and until the time fixed for the commencement of the term of a successor.

MUNICIPAL CORPORATIONS (43)—ORDINANCES—TIME OF TAKING EFFECT—PUBLICATION. Where the date of the publication of an ordinance was five full days before a city election, it was then in full effect and operation, within the requirements of Rem. Comp. Stat., § 9125, notwithstanding proof that the full edition of the paper, usually run off on the afternoon of the date of publication, was sometimes not all run through the press on that day.

SAME (72)—OFFICERS—PAYMENT OF COMPENSATION—RECOVERY. Compensation for extra services cannot be recovered by a city attorney where they plainly related to the duties of his office and the salary provided covered compensation therefor.

OFFICERS (42)—LIABILITIES—RECOVERY OF ILLEGAL FEES. A city may recover from an officer money paid for services without authority of law.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered February 20, 1924, upon findings in favor of the plaintiff, in an ac-

'Reported in 233 Pac. 955.

tion for an injunction and for money paid, tried to the court. Affirmed.

*Cornelius E. Collier,* for appellants.

*E. O. Connor,* for respondents.

FULLERTON, J.—This is an action of equitable cognizance brought by the city of Hillyard against C. E. Collier and others for injunctive relief, and to recover from Collier the sum of one hundred and ten dollars, alleged to have been wrongfully and illegally paid to him as city attorney. Judgment went in favor of the city for the relief demanded in the complaint, and from this judgment Collier and the others appeal.

The record discloses that the appellant Collier was elected city attorney for the city of Hillyard at an election held in December, 1920. The statute in force at that time (Rem. Comp. Stat., § 9116) [P. C. § 786], provided that the city attorney then elected should take office on the first Tuesday in January, 1921, and hold office for a term of two years and until his successor was elected and qualified. Normally, as the statute then existed, the term of office of the city attorney would expire on the first Tuesday in January, 1923. The legislature, however, at its biennial session of 1921, by a general act, changed the time for the election of officers in practically all of the municipal corporations of the state. Laws of 1921, ch. 61, p. 179; Rem. Comp. Stat., § 5143. The act provided that all such elections should be held on the first Tuesday after the first Monday in May in the year in which they may be called, and further provided that the terms of the officers so elected should begin on the first Monday in June following the election. This act had the effect of either lengthening or shortening the term of the officers then in office, and to meet this contingency the

act provided that the officers elected at the first election under the act should not take office until the expiration of the terms of the then existing officers, which did not expire until after the first Monday in June, and that the terms of such officers whose terms expired prior thereto should continue until the first Monday in June. The act, while seemingly plain upon its face, presented complications when applied to existing conditions which were the subject of consideration by us in *State ex rel. Pendleton v. Superior Court,* 119 Wash. 73, 204 Pac. 1053. In that case we construed the statute to mean that, as to offices such as Collier held, the term expired on the first Monday in June, 1923. This seems also to have been the appellant's then interpretation of the act. He stood for reelection at the May election in 1923, was re-elected, in due time qualified under the election, and thereafter continued to serve as city attorney.

The salary of city attorney in the city of Hillyard at the time of Collier's first election was seventy-five dollars per month. The city council, on May 1, 1923, enacted an ordinance fixing the salary for such office at twenty dollars per month. This ordinance was regularly published in the city official paper in its issue dated May 2, 1923.

In August, 1923, Collier presented a claim to the city council in the sum of $110 for extra legal services performed for the city during the months of June and July, 1923. The mayor of the city seems to have been opposed to the allowance of the claim; his opposition being based on the contention that the services for which the claim was made were not extra services, but were services which Collier was obligated to perform as a part of his regular duties as city attorney. To circumvent the condition caused by the mayor's opposition, the city council resorted to a somewhat novel

scheme. It allowed the claim at a regular meeting, and a few days later, on a holiday, when the mayor was out of town, called a special meeting at which it directed one Wilson, who was acting as mayor *pro tem,* to sign the city warrant issued in payment of the claim. This warrant was accepted by Collier, and cashed by him on August 11, 1923. The city thereupon commenced an action against Collier to recover the sum so paid.

While the action was pending in that form, Collier presented two other claims against the city, which the city council allowed, but the warrants for which the mayor refused to sign. One was presented on October 2, 1923, and was a claim for stenographer's services, at the rate of fifty-five dollars per month for the months of June, July, August and September of the year 1923, on which he allowed a credit of one hundred and ten dollars, the sum he had collected on the warrant issued as above recited; the other was for salary claimed to be due him for the months of October, November and December of 1923, at the rate of seventy-five dollars per month. After the claims had been allowed by the city council, the city amended its complaint, joining the members of the council and the county treasurer as defendants, and sought, in addition to the original relief asked, injunctive relief against the delivery and payment of the warrants. After issue joined, a trial was had, resulting in the judgment above indicated.

The appellants' first contention is that Collier's term of office, under the election of 1920, did not expire on June 1, 1923, but continued to the first Tuesday in January, 1924. From this premise it is argued that the ordinance reducing the salary of the city attorney, conceding its validity, did not become operative as to Collier during the term, because of the constitutional provision (Art. XI, § 8) forbidding a municipality to

increase or diminish the salary of a municipal officer "after his election or during his term of office;" the deduction being that the allowances made by the city council gave him nothing to which he was not legally and justly entitled, although purporting to be in part for a different consideration. But we shall not follow counsel in answering his argument. The question was before us in the case of *State ex rel. Pendleton v. Superior Court, supra.* We there determined that the terms of all municipal officers in Collier's situation expired on the first Monday in June following the expiration of their normal terms. It was admitted in the opinion that difficulties presented themselves, whichever of the discordant views there presented the court adopted, but that we felt that the view adopted more nearly corresponded with the legislative intent. The objections to the conclusion reached now urged by the appellants were fully presented at the hearing of that cause and were considered by the court, and we are not persuaded that the conclusion reached should be departed from.

The second contention is that the ordinance reducing the salary of the city attorney did not become operative until a time after Collier's second election, and in consequence the ordinance was not operative as to him. The statute provides (Rem. Comp. Stat., § 9125) [P. C. § 795], that all ordinances shall be published in a newspaper designated as the official newspaper of the city, if there be one, and further provided (Ib.) that: "No ordinance shall take effect until five days from and after the date of its publication." The ordinance in question was passed on May 1, 1923. It was published in the issue of the official paper dated on May 2, 1923. The election was held on May 8, 1923.

Using the statutory method of computation by ex-

cluding the first day and including the last, it is plain that, on the face of the record, five full days elapsed between the date of publication and the date of the election, and that the ordinance was in full force and effect on the election day.  But the publisher of the newspaper testified that the paper went to press on the afternoon of its date of issue and that sometimes the printing of the paper, that is, running the edition through the press, was not completed until the morning of the day following, and that it might have been so in this instance.  If this consideration is sufficient to postpone for one day the date the ordinance took effect, it was not in effect on the election day, and hence, under the constitutional provision cited, did not have the effect of reducing the salary of the city attorney for the term for which he was elected on that day.  It is our opinion that this circumstance does not affect the operative date of the ordinance.  The "date" of publication, the matter seemingly made material by the statute, was clearly May 2d, and it is not to be questioned that a portion of the entire issue of the paper was run through the press on that day, and the evidence is at best uncertain whether the entire issue was not so run.  This proof is too indefinite to overcome the presumption of regularity that pertains to municipal records.  If, however, the fact was established, we do not think it would postpone the date the ordinance would otherwise go into effect.  It was held that it would not in *Hoffmeyer v. Reed,* 88 Kan. 363, 128 Pac. 383, on what appears to us to be sound reasoning. See, also, *Stuhr v. Hoboken,* 47 N. J. L. 147.

The question whether the injunctive relief granted was properly so granted rests on the findings of fact made by the trial court.  As to that part of the record the appellants have not brought the evidence into this

court. The findings are ample to sustain the decree. The services for which extra compensation was claimed were plainly services which pertained to the duties of the office, and the salary provided covered the compensation that could be exacted for their performance. The claim for stenographic services falls within the same rule. They were in no sense an extraordinary expenditure for which a municipality is permitted to make an allowance. The court could, therefore, properly enjoin the allowance of claims therefor. So, also, the judgment for the sum allowed and paid as for extra services was justified. The general rule is, and this court has held in a long line of cases, that money obtained from another by mistake or without authority of law may be recovered back. See *Pacific Coal & Lumber Co. v. Pierce County, post* p. 278, 233 Pac. 953, where the cases are collected.

The judgment is affirmed.

HOLCOMB, MAIN, MITCHELL, and MACKINTOSH, JJ., concur.