[No. 45406.   En Banc.   January 5, 1979.]

PHILIP H. LUTHER, *Respondent*, v. DIXY LEE RAY,
*as Governor*, ET AL, *Appellants*.

*Slade Gorton, Attorney General,* and *Walter S. Tabler,
Assistant,* for appellants.

*Lycette, Diamond & Sylvester,* by *Lyle L. Iversen,* for
respondent.

Hicks, J.—Governor Dixy Lee Ray appeals from a judgment of the Superior Court enjoining her from replacing Philip Luther as a member of the Board of Pilotage Commissioners. The judgment is reviewed directly under RAP 4.2(a)(5) and RCW 2.06.030(a). We reverse.

The Board of Pilotage Commissioners is a state commission charged with the regulation and licensing of persons who serve as pilots on certain vessels navigating the waters of Puget Sound, Grays Harbor and Willapa Bay. Its authority and responsibilities are set forth in RCW 88.16. Prior to 1977, the board consisted of two pilot representatives, two shipping representatives and the Director of the Department of Labor and Industries. Luther was one of the pilot representatives, having been reappointed on December 6, 1975, to a second 4–year term.

During the first extraordinary session of 1977, the legislature made changes in RCW 88.16 which (1) added two public representatives to the board; (2) provided that the Secretary of the Department of Transportation, rather than the Director of the Department of Labor and Industries, would be ex officio chairman of the board; and (3) mandated confirmation by the Senate of the Governor's subsequent appointments to the board. Laws of 1977, 1st Ex. Sess., ch. 337. Chapter 337 which became effective on September 21, 1977, also charged the board with new responsibilities, including the development of new pilot examination procedures and the preparation of a comprehensive annual report.

Effective December 27, 1977, the Governor appointed six new commissioners to serve with the statutory chairman. At that time, Luther was the only one of the incumbent commissioners whose specified term had not expired.[1] At the board's first meeting after December 27, Luther was displaced by one of the newly appointed commissioners. He

---

[1]Although the specified terms of the other commissioners had expired, they had been holding over under RCW 88.16.010 until their successors were "appointed and qualified".

then brought this action asking that he be reinstated and that the Governor be restrained from further attempting to effect his removal from the board. On March 1, 1978, the trial court entered judgment granting Luther the requested injunctive relief and reinstating him to the board. This appeal followed.

The relevant portion of chapter 337, section 2(2) reads as follows at pages 1316–17:

> Pilotage commissioners holding commissions on the effective date of this 1977 amendatory act, shall continue to hold their office subject to reappointment by the governor and confirmation by the senate. The appointed commissioners shall continue to hold office for the period for which they are appointed and until their successors are appointed and qualified, ((and)) except that the governor when first appointing commissioners after the effective date of this 1977 amendatory act, shall appoint the pilot representatives to terms of two and three years respectively, the shipping representatives to terms of two and three years respectively, and the remaining commissioners to terms of three and four years respectively. Any vacancy in an appointed position on the board shall be filled by the governor for a term of four years, subject to confirmation by the senate.

While the above is not as precise as it might be, we read it as authorizing the Governor to replace incumbent commissioners with her own appointees. The first sentence states that the continuation of commissioners in office is *"subject to"* reappointment and confirmation. That expression clearly limits the terms of incumbents.

*Webster's Third New International Dictionary* 2275 (1961) defines "subject" as "4: likely to be conditioned, affected, or modified in some indicated way: having a contingent relation to something and usu. [usually] dependent on such relation for final form, validity, or significance". This court has previously indicated that "subject to" is a term which expresses a condition or qualification. In *Royal Dairy Prods. Co. v. Spokane Dairy Prods. Co.*, 129 Wash. 424, 225 P. 412 (1924), a party based its counterclaim on an alleged contract which contained a provision stating that

the contract was "subject to confirmation." The court found that, since the specified confirmation was never made, the contract had not come into existence.

■ We believe the first sentence of chapter 337, section 2(2) establishes a similar contingency. As used here, the expression "subject to" makes the continuation of incumbent commissioners in office contingent on the Governor's action. She could have reappointed one or more of the incumbent commissioners, subject to confirmation by the Senate. She did not.

We cannot agree with Luther's contention that the first sentence was included to allow the Governor to reappoint an incumbent commissioner at the end of his term. Had the legislature desired to prohibit reappointment of incumbent commissioners, it would have been necessary for it to so state in order to limit the power of appointment granted the Governor. There would be no reason for the legislature to include a sentence for the purpose Luther suggests. The Governor needed no specific authorization to reappoint an incumbent.

We must also reject Luther's argument that the sentence was included only to require Senate confirmation in the event the Governor chose to reappoint an incumbent at the end of his term. Had this been the intent, the legislature would not have made continuation subject to reappointment as well as to confirmation. We believe that if this sentence is to have any meaning, it must be read as authorizing replacement of incumbents by the Governor.

Luther argues that the second sentence, which provides that appointed commissioners "shall hold office for the period for which they are appointed" requires that he be allowed to complete his term. We disagree. Read as a whole and in context, that sentence applies only to commissioners appointed after the effective date of chapter 337. The first sentence, which clearly applies only to incumbents, refers to them as "pilotage commissioners holding commissions on the effective date." The latter part of that sentence discusses a reappointment which necessarily takes place after

that effective date. The sentence in question then begins referring to the "appointed commissioners." The use of that expression immediately following a discussion of appointment after the effective date, makes it clear to us that the sentence is limited in application to appointments made after that date.

We also note that if this sentence was construed as applying to incumbent commissioners, it would be inconsistent with what we deem to be the only rational interpretation of the first sentence. Under Luther's construction, the second sentence would authorize incumbents to serve out their entire term, while the preceding sentence would provide for the Governor to shorten that term.

The conclusion that the statute empowers the Governor to replace all incumbents is supported by two other aspects of chapter 337. First, that interpretation is suggested by the sweeping nature of the reforms instituted by that amendment. The comprehensiveness of the changes made indicates a dissatisfaction by the legislature with the board and its operations. It seems likely that the legislature intended to provide the Governor an option to select new membership to accomplish the desired reforms. Second, the provision in section 2(2) for the staggering of the commissioners' terms suggests that the initial appointments would be made simultaneously. Staggering is accomplished by varying the terms of initial appointments and subsequently appointing for fixed and equal terms. Such a system can be fully effective only when the unequal initial terms begin at the same time. Thus, the provision for staggered terms provides further indication that the legislature intended to shorten the terms of incumbents by allowing the Governor to make six simultaneous appointments to the board.

■ Luther's reliance on the rule that statutes should not be construed to shorten the terms of incumbents is misplaced. That rule, which was stated though not discussed in *State ex rel. Pendleton v. Superior Court*, 119 Wash. 73, 204 P. 1053 (1922), is a general rule of construction which operates only when the legislature's intent is not otherwise

clearly discernible. It does not apply in derogation of the legislature's apparent intent where that intent can be perceived.

Reversed.

ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

WRIGHT, C.J. (dissenting)—I dissent. The problem herein relates to interpretation of a statute, that is, RCW 88.16 as amended by Laws of 1977, 1st Ex. Sess., ch. 337, § 2(2).

I strongly disagree with the majority in its conclusion that the language of the statute is clear and unambiguous. I believe the legislative language is as ambiguous and unclear as language could possibly be.

We said in *State ex rel. Pendleton v. Superior Court,* 199 Wash. 73, 78, 204 P. 1053 (1922): "the rule is that statutes will not be construed to shorten the terms of incumbent officers unless the intent is plainly and clearly expressed." That statement is in conformity with the general rule as expressed by the courts of other jurisdictions. *See, e.g., State ex rel. Reynolds v. Roan,* 213 So. 2d 425 (Fla. 1968).

The majority seeks to avoid that rule by the simple expedient of saying the legislative act clearly expresses a different intent. With that conclusion I disagree.

> Pilotage commissioners holding commissions on the effective date of this 1977 amendatory act, *shall continue to hold their office* subject to reappointment by the governor and confirmation by the senate.

(Italics mine.) Laws of 1977, 1st Ex. Sess., ch. 337, § 2(2). What does the language "shall continue to hold their office" mean? The majority points out that such language does not mean the incumbent commissioners are eligible for reappointment. If it does not mean that, then it must mean they "shall continue to hold their office."

Language in a statute is never to be deemed surplusage. *Smith v. Greene,* 86 Wn.2d 363, 545 P.2d 550 (1976);

*Tradewell Stores, Inc. v. Snohomish County,* 69 Wn.2d 352, 418 P.2d 466 (1966); *Kasper v. Edmonds,* 69 Wn.2d 799, 420 P.2d 346 (1966).

I believe the proper meaning of the section in question is that the commissioner will hold his office to the end of his term and then may continue after that if reappointed and confirmed. That interpretation would conform to the usual rule of law as stated above and seems most probably what the legislature intended. If the legislature had any other intention the act would have so stated.

For the reasons stated, I would affirm.

Reconsideration denied February 8, 1979.